W. O. Wyckoff et al., Appellants, v. Southern Hotel Company, Respondent.

St. Louis Court of Appeals, January 18, 1887.

1. Liens—Inn-keepers.—The lien of an inn-keeper, under the statute, is confined to the "baggage and other valuables of the guest," and will not cover goods of third persons taken to the inn by the guest.

2. —— Warehousemen.—Inn-keepers may acquire a warehouseman's lien on the goods of a third person lawfully in the guest's possession, and stored at his request.

Appeal from the St. Louis Circuit Court, Shepard Barclay, Judge.

*Reversed and judgment.*

JOHN N. DENNY, and ORR & CHRISTIE, for the appellants: Under the statute, the respondent is not entitled to a lien on property not belonging to guests. Rev. Stat., sect. 3198. An inn-keeper's lien "does not cover a chattel subsequently hired by the guest and brought into the inn." Edwards on Bailments (2 Ed.) sect. 474. The right of lien is correlative to, and dependent upon, the liability of the inn-keeper. As the respondent would not have been liable to the appellants for the loss of the type-writer, or for any injury thereto (not occasioned by its negligence), no lien can attach. *Inglesbee v. Wood*, 36 Barb. 455 ; *Grinnell v. Cook*, 3 Hill, 485. To hold that the respondent has a lien in this case, is to violate a fundamental right of property, guaranteed by the constitution. Constitution of Missouri, art. 2, sect. 20 ; *Sargent v. Usher*, 55 N. H. 287. The statute is exclusive. It covers the whole ground, and, therefore, repeals the common law. *Coates v. Acheson*, 23 Mo. App. 255 ; *The State v. Slaughter*, 70 Mo. 484 ; *The State v. Boogher*, 71 Mo. 631 ; *Smith v. The State*, 14 Mo. 152 ; *The State v. Roller*, 77 Mo. 120. The statutory remedy must be pursued, and that remedy may not be invoked for the enforcement of a common law right. *Moore v. White*, 45 Mo. 203 ; Sedg. on Stat. & Const. Law, p. 39 ; *Stafford v. Ingersoll*, 3 Hill, 38 ; *Lang v. Scott*, 1 Black (Ind.) 405 ; . *Alm v. Harris*, 5 J. R. 175.

LEONARD WILCOX, for the respondent: An inn-keeper's lien extends to the goods of third persons in possession of the guest and received into the inn, if the inn-keeper has no notice that they belong to such third person, particularly where, as in the case at bar, the possession of the guest is lawful. Edwards on Bailments, sect. 475 ; Story on Bailments, sect. 476, p. 445 ; *Cook v. Prentice*, 34 Alb. L. J. 93 ; *Manning v. Hallen-*

*beck*, 27 Wis. 202; *Snead v. Watkins*, 1 C. B. (N. S.), 266; *Threfall v. Borwick*, 10 Q. B. 211; s. c., 7 *Id.* 711; *Jones v. Morrill*, 42 Barb. 626; *Grinnell v. Cook*, 3 Hill, 490; *Turrill v. Crawley*, 18 L. J., 155, (Q. B.); 5 Bacon Ab., p. 237, tit. Inn-keeper. This is unquestionably true where credit was given the guest on the faith of the goods, and the person giving the credit did not know that they were the property of a third person. *Bayley v. Merrill*, 10 Allen, 360; *Case v. Allen*, 21 Kas. 217; *Williams v. Alsup*, 10 C. B. (N. S.) 416; *Scott v. Delahunt*, 65 N. Y. 125; *Weldon v. Gould*, 3 Esp. 268; *White v. Smith*, 44 N. J. L. 105, 113. And, generally, the rule is, that an act which gives cumulative and not inconsistent remedies, and especially one which embraces cases not covered by the former legislation, does not repeal prior statutes on the same subject. Sedgwick on Stat., p. 100, note; *Raudebaugh v. Shelly*, 6 Ohio St. 316, 317; *Wilson v. Shorrick*, 21 Iowa, 334; *Mitchell v. Duncan*, 2 Florida, 16–19; *Waldo v. Bell*, 13 Louisiana Ann. 330; *Clark v. Brown*, 18 Wend. 220; *Stafford v. Ingersoll*, 3 Hill, 39. The general tendency has been to hold that such statutes enlarged rights and remedies existing at common law, and were cumulative. Potter's Dwarris on Stat., p. 73; *Jacobs v. Knapp*, 50 N. H. 77; *Arians v. Brickley*, 65 Wis. 26, 31; *Towle v. Raymond*, 58 N. H. 64; *Williams v. Goulding*, L. R., 1 C. P. 78; *Scott v. Delahunt*, 65 N. Y. 131.

THOMPSON, J., delivered the opinion of the court.

This is an action of replevin for a Remington typewriter. The case was tried in the circuit court upon the following agreed statement of facts: "About March 24, 1885, the plaintiffs in this action loaned the typewriter in dispute to one A. H. Lighthall, who was then a guest of the defendant, who was and is a hotel-keeper and inn-keeper in the city of St. Louis, Missouri; that said Lighthall took said machine into the defendant's hotel,

said Lighthall being then and there a transient guest at the defendant's hotel, and, after remaining there about one week, left the city and state aforesaid, being indebted to the defendant for his board and lodging, furnished him by the defendant at his request, while so stopping at said hotel, in the sum of $75.20, which is still due the defendant, and is unpaid, and left said machine in the possession of the defendant at its said hotel, where it remained and was stored until the commencement of this action ; that the plaintiffs demanded possession of said machine about July 1, 1885, which demand was refused by the defendant, who claimed a lien on such machine for the amount aforesaid, due it as aforesaid and on account aforesaid, by said Lighthall ; that thereupon the plaintiffs instituted this suit and obtained the issuance of a writ out of the court of Patrick Sheehan, justice of the peace in said city, which was executed by the constable, by taking said machine out of the possession of the defendant, and delivering it to the plaintiffs, and it is now in the plaintiffs' possession, and is of the value of $100. It is further agreed that the defendant had no notice that said machine was claimed by or belonged to the plaintiffs, or to any other person than said Lighthall, prior to the making of said demand, about July 1, 1885. The defendant now claims a further lien on said machine for storing and taking care of the same from April 1, 1885, at a rate to be fixed by the court, not to exceed one dollar per month."

Upon this agreed statement of facts the court found for the defendant, assessing the value of its interest in the property at the sum of $78.87 ( being, it is understood, the aforesaid sum of $75.20, with interest to the date of judgment ), and assessed the defendant's damages for the detention of the machine at one cent, and rendered judgment accordingly.

I.   The principal question for decision is, whether, in this state, an inn-keeper or hotel-keeper is entitled to a

lien upon goods brought to the inn or hotel by a transient guest, for board and lodging furnished such guest at his request, which goods are not the property of the guest, but are the property of a third person in the custody of the guest by permission of the owner. It is perceived that the foregoing statement of facts does not state whether, at the time the plaintiffs loaned the type-writer to Lighthall, they knew he was a guest at the defendant's hotel, or was about to become such, or that they consented that Lighthall should take it to the hotel; but in the view we take of the case this omission is not material.

The authorities cited on behalf of the defendant go to show that, by the common law, an inn-keeper had a lien upon the goods of his guest, brought to his inn, for board and lodging furnished by him to the guest at the request of the latter, although the goods may not have been the property of the guest, but may have been the property of some third person, provided the inn-keeper was not aware that the goods were not the property of the guest. *Cayle's Case*, 8 Coke Rep. 32*a*; *Threfall v. Borwick*, L. R. 7 Q. B. 177; s. c. affirmed, L. R. 10 Q. B. 210; *Manning v. Hollenbeck*, 27 Wis. 202; *Cook v. Prentice*, (Supreme Court, Oregon, 1886) 34 Alb. L. J. 93; *Jones v. Morrill*, 42 Barb. 623, 626, per Barnard, J.; *Grinnell v. Cook*, 3 Hill (N. Y.) 485, 490, per Bronson, J.; *Turrell v. Crawley*, 18 L. J. (Q. B.) 155. This rule has been thought by enlightened judges, even in recent times, to be a just rule. It is grounded upon the extraordinary liability which the law imposes upon an inn-keeper in respect of goods brought by his guest to his inn, he being answerable for any loss or destruction of such goods, except such as arise from the act of God or the public enemy. Several of the decisions above quoted show that the courts have regarded it as immaterial that the inn-keeper may not have been obliged to receive into his inn goods of the character of the article in controversy; since, when he did consent to receive them, the

extraordinary liability with which the law charges an inn-keeper attached to him in respect of them, for which reason they argue, he ought to have a lien upon them. And the cases go upon the ground that the lien of the inn-keeper is co-extensive with his liability.

II.   Such being undoubtedly the common law, the only remaining inquiry is, whether our statute relating to the lien of hotel, inn, and boarding-house keepers was designed to restrict the common law rule.   This statute, as originally enacted in 1877 (Laws of 1877, page 296), was entitled, "An act for the protection of hotel, inn, and boarding-house keepers, and to give them a lien on the baggage, wages, and valuables of their guests and boarders, and provide a remedy for enforcing the same."   It contained three sections.   The first defined the *right* of the lien of hotel, inn, and boarding-house keepers, and the second and third prescribed the *remedy* for the enforcing of such right.   The first section has been embodied without change in the Revised Statutes of 1879, at section 3198, and reads as follows:   "Hotel, inn, and boarding-house keepers shall have a lien upon the baggage and other valuables of their guests or boarders, brought into such hotel, inn, or boarding-house by such guests or boarders, and upon the wages of such guests or boarders for their proper charges due from such guests or boarders, for their accommodation, boarding, and lodging, and for such extras as are furnished at their request."   The argument on behalf of the defendant is that the purpose of this statute was merely to give an additional remedy for the enforcement of the lien, so far as hotel or inn-keepers are concerned, which exist at common law, and to create a lien on behalf of boarding-house keepers, and to provide a remedy for the enforcement of such lien ; and it is argued that, in so far as it relates to the lien of hotel-keepers, it falls within the rule that statutes which merely give an additional remedy for the enforcement of an existing right, are not to be held as superseding, or repealing by implication, a

rule of the common law.    This principle is not doubted; but this case does not seem to fall within it, because the statute does more, even in respect of the hotel and inn-keeper's lien, than give a remedy which did not exist at common law, and which might, therefore, be regarded a cumulative remedy.

Let us read the statute in so far as it relates to inn-keepers only.    It is perceived that in its literal terms it restricts the lien of the inn-keeper in one. respect and enlarges it in another.    By its terms the subject of the lien is "the baggage or other valuables *of their guests.*" These terms, by their natural and ordinary import, restrict the lien to the goods and other valuables belonging to the guests.    Language appropriate to a lien as large as that of the common law, would have applied it to the "goods or other valuables brought into the inn or hotel by the guest and received by the inn or hotel-keeper." Then, it is perceived that the statute enlarges the lien beyond that which existed at common law, by giving the hotel or inn-keeper a lien upon the *wages* of his guest, which he did not have at common law.    It is also doubtful whether the statute does not create a larger lien than that given to an inn-keeper by the common law, in so far as it gives the lien, not only for the proper charges of the inn-keeper for the accommodation, boarding, and lodging of the guests, but also "for such extras as are furnished at their request."    We do not gather from any of the decisions which we have examined an intimation that the inn-keeper had a lien at common law for "extras" furnished to his guests in any other character than his proper character of inn-keeper.

The statute, then, not only creates a *remedy* which did not exist before, but it purports to define a *right* which existed before, enlarging it in some respects and restricting it in another.    It is true that repeals by implication are not favored, and the rule is quite as strong, if not stronger, in respect of the repeal of a rule of the common law by a subsequent statute, than in respect of

the repeal of a previous statute by a subsequent one. We do not doubt the principle that the rule of the common law will not be deemed to have been repealed by an act of the legislature, unless the statute in terms purports to cover the whole subject of the common law rule, and to prescribe a rule *different from*, and *repugnant to*, the rule of the common law. We do not dispute the principle that, where a statute in defining a right merely *enlarges* the right as it existed at common law, it will not be deemed to have repealed the common law *remedy*, for the enforcement of the right; because the common law remedy follows the common law right, and the effect of such a statute is not to repeal the common law right. *Arians v. Brickley*, 65 Wis. 26, 31. But clearly this can not be affirmed of a statute which purports to define a right existing at common law, and in defining it restricts it in a given particular to a smaller right than the right which the common law gave. Such a statute, called by Judge Potter a *restraining* statute (Potter's Dwarris on Statutes, 73), undoubtedly supersedes the rule of the common law, and repeals it by implication. This is our judgment as to the effect of the statute in this case. It was manifestly intended by the legislature, in enacting it, to cover the whole subject of the lien of inn-keepers and boarding-house keepers, to define the lien, to apply a uniform right of lien to the two classes of persons, and to supply an easy and adequate remedy for its enforcement. It would bring confusion and uncertainty into the law, to hold that a statute of this character can co-exist with the rule of the common law in respect of the lien of an inn-keeper.

III. From the foregoing, it follows that we do not concur in the view pressed upon us by the learned counsel for the defendant, that, the above statute being remedial in its nature, the words "baggage and other valuables of their guests" may be enlarged so as to mean baggage and other valuables brought to hotels or inns by their guests. The meaning of the statute must

be gathered from the language used; and upon the plainest principles of interpretation, we are not authorized to go outside of the plain meaning of the words, and to import into the statute a meaning not found in those words, upon a supposition that the legislature may not have intended to change a previously existing rule of the common law. It is true that we are urged to adopt this supposition in view of the fact that the tendency of recent legislation has been to restrict the liability of hotel-keepers, and to enlarge their rights. Such, indeed, has been the tendency of recent legislation; but, as the judges of the common law have placed the extraordinary lien which the common law gave to the hotel-keeper upon the ground of the extraordinary liability which that law imposed upon him in respect of the goods of his guest,—making the lien co-extensive with the liability, that is, giving him the lien in respect of the same goods as to which the law imposed upon him the liability,—the fact that modern legislation has thus restricted the liability, may have furnished a reason to the legislature for the conclusion that they ought to restrict the lien.

Nor are we prepared to agree with those courts which have found a plain principle of justice in a rule of law by which one man's property is confiscated to pay another man's debts. It is, to say the least, doubtful, whether the extraordinary liability which the common law imposed upon the inn-keeper, in respect of goods brought to his inn by his guest, furnishes a good reason for such a rule. It is also doubtful whether such a rule is not in conflict with the spirit of those guaranties of the right of private property which are embodied in American constitutions. It would be beyond the power of the legislature to pass a law under which the property of one man should be arbitrarily taken from him and given to another man. *Loan Association v. Topeka*, 20 Wall. 655. If the legislature could not pass such a law, we are not prepared to sanction a course of

reasoning by which the conclusion is arrived at that the legislature intended to preserve such a rule of the common law, by enacting a statute, the terms of which, read in accordance with their sense, import the contrary.

Again, the liability of a common carrier at common law is precisely that of an inn-keeper. He is liable for the loss or damage of the goods committed to him for carriage happening from every other cause except the act of God or the public enemy. Both, the liability of the carrier and that of the inn-keeper, were grounded, at common law, upon what was called the custom of the realm. They were co-extensive with each other, had their origin in the same source, and rested upon the same considerations of public policy. And yet modern American courts have not hesitated to declare that a common carrier has no lien for the carriage of goods which he has innocently received from a wrong-doer, without the consent of the owner, express or implied. *Fitch v. Newberry*, 1 Doug. (Mich.) 1; *Robinson v. Baker*, 5 Cush. 137; *Stevens v. Railroad*, 3 Gray, 262; *Clark v. Railroad*, 9 Gray, 231.

Upon the whole we are satisfied that the lien of a hotel or inn-keeper does not exist in this state in such a case as the present; and we are, therefore, brought to the final inquiry, what is the proper judgment to render under the agreed statement of facts. The statement recites that the defendant claims a further lien on the machine for storing and taking care of the same for the period of three months, at a rate to be fixed by the court, not to exceed one dollar per month. We understand this part of the statement to be tantamount to a request for the decision of the court upon the question, whether, as matter of law, under the other facts recited in the agreed statement, the defendant was entitled to a lien on the machine merely for the storage thereof. We do not doubt the principle that, where personal property comes lawfully into the possession of a third person, and he stores it, or otherwise cares for it, and preserves it, he

is entitled to a lien for his reasonable compensation therefor. We also understand this clause of the agreed statement to submit the question of the compensation to which the defendant may be entitled for the storage of the machine, to the decision of the court, without any evidence speaking upon the question. Assuming that these services were of *some* value, we shall take the course of reversing the judgment, and entering judgment here in favor of the defendant for the sum of one dollar, being the amount of the defendant's interest in the machine, by virtue of its lien for keeping and storing it from the first of April to the first of July, 1885, as above stated, together with one cent damages for the detention thereof. This judgment will entitle plaintiff to the costs of the appeal, and also to the costs of the court below. It is so ordered. All the judges concur