**M & M HOTEL CO v NICHOLS**

Ohio Appeals, 1st Dist, Hamilton Co

No 4876. Decided Dec 2, 1935

Harry Hess, Cincinnati, for plaintiff in error.

Paxton & Seasongood, Cincinnati, and Evans DeCamp, Cincinnati, for defendant in error.

**OPINION**

By ROSS, PJ.

Diehm became in arrears for his bill and upon being pressed for payment, turned the machine over to the Hotel. The management in seeking a possible purchaser for the machine induced the defendant in error, a dealer in such articles, to examine it. The number of the machine was taken by the defendant in error, and it was discovered that this machine had been stolen from its premises. Diehm was arrested, prosecuted, and his case ignored by the grand jury. The prosecutor seized the machine as evidence, later returning it to the hotel. For some reason, which does not appear, the machine was again placed in the custody of the prosecuting attorney. The record being silent as to whether the Hotel, vlountarily surrendered the machine or was required to deliver it to the prosecuting attorney, we are required to presume that his custody thereof was lawful and that the hotel was required to surrender it again. No reason occurs to us why the hotel would deliver the machine to the prosecuting attorney, unless he, in his official capacity had demanded same. The hotel is not bound to compel the prosecuting attorney to resort to law in order to retain its possessory lien. His possession constitutes the property in custodia legis and the lien is preserved.

This disposes of the claim of the defendant in error that the hotel had lost its lien by releasing custody of the machine.

The question then presented for our consideration is—whether or not the hotel has the lien of an innkeeper upon this adding machine, which is admittedly stolen property, under the control of its guest, the hotel management being unaware at the time it was placed in the hotel as a part of the effects of the guest that it had been stolen, or that it was not the lawful property of the guest.

The lien is claimed by virtue of the provisions of §5984, GC, which reads as follows:

"Such innkeeper shall have a lien on the baggage and other property in and about such inn belonging to or under the control of his guests or boarders for the proper charges due him for their accommodation, board and lodging, for money paid for or advanced to them, and for such other extras as are furnished at their request. The innkeeper may detain such baggage and other property until the amount of such charges is paid, and the baggage and other property shall not be exempt from attachment or execution until the innkeeper's lien and the cost of enforcing it are satisfied."

It will be noted that the statute itself recognizes that there is a distinction between title and possession and extends the protection of the lien to the farthest extent. Many statutes of other states qualify this language by the use of such terms as —"lawful possession", or "the property of the guest", or limit it to the property of the guest in which he has a good title. Other statutes specify that the innkeeper must be unaware that a third party owns the property. The Ohio statute uses the broadest possible terms. This statute, it has been properly said "is without question an exception to the general rule of the common law, of which the present statutes §§5984 and 5985, GC, are merely declaratory that one cannot be deprived of his chattels without his consent or knowledge." Cooperider et v Myre, 37 Oh Ap, 502, 505. Thoma v Remington Typewriter Co., 11 C.C. (n.s.) 174, (20 C.D. 691).

The statute, not being in derogation of the common law, therefore need not receive strict construction against the lien claimant, but on the contrary must receive such construction as will give the claimant the full limit of the security intended to be provided by the legislature, having in mind its large scope.

We have been cited to and find no case directly in point with the case under consideration.

In Waters & Co. v Gerard, 189 N. Y. 302 (1907) the court has set forth an exhaustive and scholarly review and discussion of the law pertaining to the liens of innkeepers, as found in the common law, upon property in the possession of guests, owned by third persons.

From the many cases decided by English courts construing the common law and the quotations from textwriters, it is clear that at common law a lien may be claimed by the innkeeper upon the property of the guest, even though the same may have been stolen from a third person, especially if the innkeeper is ignorant of the theft.

We are unable to resist the temptation to incorporate herein the very forceful, if not peevish, language of Lord Esher used in speaking upon this question in the case of Robins & Co. v Gray, 2 Q. B., 501, (1895) at page 503:

"I have no doubt about this case. I protest against being asked, upon some new discovery as to the law of innkeeper's lien, to disturb a well-known and very large business carried on in this country for centuries. The duties, liabilities, and rights of innkeepers with respect to goods brought to inns by guests are founded, not upon bailment, or pledge, or contract, but upon the custom of the realm with regard to innkeepers. Their rights and liabilities are dependent upon that, and that alone; they do not come under any other head of law. What is the liability of an innkeeper in this respect? If a traveler comes to an inn with goods which are his luggage—I do not say his personal luggage, but his luggage—the innkeeper by the law of the land is bound to take him and his luggage in. The innkeeper cannot discriminate and say that he will take in the traveller but not his luggage. If the traveller brought something exceptional which is not luggage —such as a tiger or a package of dynamite —the innkeeper might refuse to take it in; but the custom of the realm is that, unless there is some reason to the contrary in the exceptional character of the things brought, he must take in the traveller and his goods. He has not to inquire whether the goods are the property of the person who brings them or of some other person. If he does so inquire, the traveller may refuse to tell him, and may say, 'What business is that of yours? I bring the goods here as my luggage, and I insist upon your taking them in'; or he may say, 'They are not my property, but I bring them here as my luggage, and I insist upon your taking them in'; and then the innkeeper is bound by law to take them in. Again, suppose the things brought are such things as the innkeeper is not bound to take in, he may, as I have said, refuse to take them in although the traveller demands that they shall be taken in as his luggage; but if after that the innkeeper changes his mind and does take them in, then they are in the same position as goods properly offered to the innkeeper according to the custom of the realm. Then the innkeeper's liability is not that of a bailee or pledgee of goods; he is bound to keep them safely. It

signifies not, so far as that obligation is concerned, if they are stolen by burglars, or by the servants of the inn, or by another guest; he is liable for not keeping them safely unless they are lost by the fault of the traveller himself. That is a tremendous liability; it is a liability fixed upon the innkeeper by the fact that he has taken the goods in; and by law he has a lien upon them for the expense of keeping them as well as for the cost of the food and entertainment of the traveller. By law that lien can be enforced, not only against the person who has brought the goods into the inn, but against the real and true owner of them. That has been the law for two or three hundred years; but today some expressions used by the judges, and some questions—immaterial, as it seems to me—which have been left to juries, are relied on to establish that if the innkeeper knows that the goods are not the goods of the person who brings them to the inn, he may refuse to take them in; or, if he does take them in, he has no lien upon them. One cannot help asking, what is his liability supposed to be if he does take in goods under such circumstances? It must be borne in mind that goods brought into an inn are not exclusively in the possession of the innkeeper; the person who brings them may deal with them; he may take them out of a box in a room or passage without the knowledge of the innkeeper, though the latter is bound to see that no one else interferes with them. Now, is there any decided case in which it has been held that, although goods have been brought to an inn as the luggage of the traveller and received as such by the innkeeper, he has no lien upon them if he knows they are not the goods of the traveller? There is not one such case to be found in the books. It was said that Broadwood v Granara (1) was such a case. But there the proposition, that if a guest brings goods into an inn as his luggage they must be treated as if they were his goods, was fully recognized. The judges held in that case that a piano, not brought to the inn by the guest as his luggage, but sent in by a tradesman for the guest to play upon during his stay at the inn, was not offered to, nor taken possession of by, the innkeeper under the custom of the realm as the luggage of the guest, and therefore that the piano was not subject to the innkeeper's lien. Whether we should have agreed with that decision is immaterial. The case was expressly decided on the ground that the law of innkeepers did not apply. It is, therefore, no

authority in the case now before us, where, as the learned judge in the court below has found, the goods were brought to the inn as the goods of the traveller and accepted as his goods by the innkeeper. If we were to accede to the argument for the appellants we should be making a new law, and our decision would produce in very many cases great confusion and hardship. I am of opinion that an innkeeper is bound to take in goods with which a person who comes to the inn is travelling as his goods, unless they are of an exceptional character; that the innkeeper's lien attaches, and that the question of whose property the goods are, or of the innkeeper's knowledge as to whose property they are, is immaterial. This appeal should, therefore, be dismissed."

It is true that it was not necessary for the learned judge to go to the extent which he did, since the case involved an innkeeper's lien upon sewing machines, the property of an employer of a guest sent him for sale and brought into the hotel by the guest. The language of the court is, however, an indication of the rule of the common law covering the lien of an innkeeper upon stolen property in the possession of a guest. Many modern as well as early text writers reach a like conclusion. Note the quotations in Waters & Co. v Gerard, supra:

"In Wait's Law and Practice (5th ed. Vol. 1, 655) it is said: 'The law gives to any innkeeper a lien whether the goods are the property of the traveller or the property of third parties from whom it has been hired or even fraudulently taken or stolen, if the innkeeper has no notice of the wrong and acts honestly.'

"In Overton on the Law of Liens (§123, page 150) it is said: 'If property, goods, horses or the like are brought by a guest to an inn at which he obtains accommodations and leaves the property in custody of the innkeeper it seems the lien will attach thereto whether it belong to a guest or to a third person for whom the guest is bailee or indeed even if it had been stolen by the guest. For the innkeeper is bound to receive and entertain the guest, and when unaccompanied by any suspicions would not be justified in inquiring into the title to the property delivered by the guest to his possession. Possession is prima facie evidence of ownership.'

"In Cowen's Treatise (6th ed. Vol. 1, page 359) it is said: 'His (an innkeeper's lien) for the keeping of the horse or other prop-

erty of his guest is valid as against the true owner although the guest did not own it and even when he stole it if it was received and kept without knowledge of the facts.'

"In Wharton's Law of Innkeepers (page 118) it is said: 'The innkeeper has, therefore, a lien upon all goods brought by a guest. * * * He is not bound to inquire whether his guest is the owner of goods he brings with him to the inn but only wheth-er he comes as a guest, but he is bound to receive the goods whatever their nature provided he has sufficient accommodations and has, therefore, a lien upon such goods which cannot be defeated even by the true owner'."

In 14 R.C.L., p. 540-541, it is stated:

"It is the well established general rule in the absence of statute to the contrary that an innkeeper's lien is not confined to property owned by the guest, but attaches to all property brought to the inn by him, and received on the faith of the innkeeping relation, though it may belong to a third person, provided the innkeeper does not know that it is not the property of the guest, and this has been held to be true even in the case of property which had been stolen or wrongfully obtained by the guest, when received and kept without knowledge of the fact."

32 Corpus Juris, p. 570-571:

"Except in jurisdictions where the rule has been modified or abrogated by statute the lien of an innkeeper may attach to goods which are not the property of the guest but which were brought by him to the inn and were received by the innkeeper in his capacity as such without knowledge of their true ownership or with knowledge that while the title is in another, yet that the guest as agent, servant, or otherwise, is in lawful possession thereof. The rule has been applied even to stolen property, and to property, such as pianos, which a traveller does not ordinarily carry with him as a part of his luggage. On the other hand, where goods are brought to the inn with notice or knowledge on the part of the innkeeper that they are the property of a third person, no lien attaches, except under a statute extending the lien to property under the control of a guest."

In Beale on Innkeepers and Hotels, §255, page 178-179, it is stated:

"Generally speaking the lien extends to all property of every kind brought to the inn by the guest, or left at the inn for the

guest, each article of property being security for the whole bill. There is one debt and one lien in respect of the whole of the innkeeper's charges. This proposition has almost never been questioned; it was, however, doubted and litigated in the case of Mulliner v Florence. In that case it appeared that a guest brought with him to the defendant's inn a pair of horses, wagonette and harness. The guest left the inn owing over one hundred pounds for his own entertainment and over twenty pounds for the keep of the horses. The horses belonged in fact to the plaintiff, who tendered the amount due for their keep and demanded that they be given up to him. The court held that he must pay the whole charge. The Lord Justice Bramwell said: 'Was it a lien on the horses for the charges in respect of the horses, and on the carriage in respect of the charges of the carriage, and no lien on them for the guest's reasonable expenses, or was it a general lien on the horses and carriage and guest's goods conjointly for the whole amount of the defendant's claim as innkeeper? I am of opinion that the latter was the true view as to his lien, and for this reason, that the debt in respect of which the lien was claimed, was one debt, although that was made up of several items. An innkeeper may demand the expenses before he receives the guest, but if he does not, and takes him in and finds him in all things that the guest requires it is one contract, and the lien that he has is a lien in respect of the whole contract to pay for the things that are supplied to him while he is a guest. If this was not the case a man might go to an hotel with his wife, and then it might be said that the innkeeper's lien was on the guest's luggage for what he had consumed, and on the wife's luggage for what she had had. The contract was, that the guest and his horses and carriage shall be received and provided for; there was one contract, one debt, and one lien in respect to the whole of the charges'."

See also: §261, p. 182, Id.

Beale cites the case of Mulliner v Florence, 3 Q. B. D., 484, a case where a swindler obtained possession of horses, wagonette and harness, and left them at an inn in which he had been a guest. The court sustained the lien of the innkeeper on all of the property for the entire bill. The innkeeper, however, lost his lien on the horses having sold the same.

There are many statements by the courts indicating their opinion of the extent to

which courts should go in enforcing the lien involved, but it is to be noted that where the lien has been enforced against property of a third person in the custody of a guest, possession had invariably been given by the owner voluntarily, although it is true, in some cases, through fraud or swindle.

In Cook v Kane, 13 Oregon, 482, at page 485, it is stated:

"It is not material whether the innkeeper is bound to receive such property, or not, although it is said the liability may be well extended, according to the advanced usages of society; yet if he does receive as the property of his guest, and thereby becomes liable for it, he must be entitled to his lien. (Threfall v Borwick, 10 Q. B. 210).

"Whenever, by virtue of the relation of innkeeper and guest the law imposes this extraordinary responsibility for the goods of the guest, it gives the innkeeper a corresponding security upon the goods put by the guest into his possession."

In construing a statute containing language similar to our own, the Supreme Court of Iowa (1897) in Brown Shoe Co. v Hunt, 103 Iowa, 586, at page 590, say:

"Under our statute, the innkeeper may 'take and retain possession of all baggage and other property belonging to or under the control of their guests, which may be in such hotel or inn.' Clearly, the legislature intended by the words used to give a lien, not only upon the property in fact belonging to the guest, and which was in the hotel or inn, but likewise a lien upon property placed therein which was under the guest's control. The guest in this instance was a traveling man, selling goods by sample, and the lien is claimed upon these sample goods and the receptacles in which they were contained. These goods were used in the prosecution of his business as a salesman. The nature and character of his occupation were such that plaintiff must be held to know he would be compelled to stop at hotels or inns, and that, in the proper prosecution of his avocation, he would need his sample goods in such hotels or inns. The statute clearly covers such goods as they were, under the control of the guest."

In Gordon v Silber, 25 Q. B., 491, at 493, the court say:

"The right of lien of an innkeeper depends upon the fact that the goods came into his possession, in his character of innkeeper, as belonging to a guest: Smith v

Dearlove, 6 C. B. 132. The guests received in this case were Mr. Martin Silber and his wife, and all the goods received by the innkeeper were received as the goods of Mr. Martin Silber and his wife. They brought the goods to the hotel. If Mr. Martin Silber had stolen the goods, the lien, as I have said, would have attached. Can it be said that it is not to attach because some of the goods happen to be the separate property of his wife, who was received as his wife with him as his guest?"

In Thoma v Remington Typewriter Co., supra, the predecessor of this court, citing Waters & Co. v Gerard, supra, held in the first and second paragraphs of the syllabus:

"1. Section 4427b, relating to the lien of an innkeeper, is merely declaratory of the common law, and does not violate any constitutional provision.

"2. The lien of an innkeeper attaches to a typewriter, left at the inn by a guest who departed without paying his bill, notwithstanding the guest had no title to the machine, and had obtained possession of it by false pretenses."

The decisions, it must not be overlooked, are not entirely unanimous in sustaining the absolute lien of the innkeeper in every case, but it will usually be found that a statute is involved in those concluding adversely to the lien, and that the statute has limited the common law rule by its failure to include the full extent of the right given thereunder or has definitely limited same.

In our consideration of the several authorities dealing with the question, we find that of an able writer, Van Zile, who has written upon the subject of "Bailments and Carriers" (2nd ed.) 1908. This author first fairly states the common law rule as heretofore developed:

"The English rule seems to have been followed by the courts in some instances, though it would seem not to have been very wisely reasoned out. This rule is, that because of the exceptional liability of the innkeeper, approaching almost that of an insurer of the goods brought within the inn by the guest, and because the law makes it incumbent upon him to receive the goods of the traveler or guest, that therefore he may have a lien for his compensation upon whatever goods or property is brought by the guest into the inn and placed in the custody of the innkeeper,

72

without reference to the question of ownership; and, indeed, the courts have gone so far as to hold that the innkeeper may even have a lien upon the property brought within the inn by the guest, although it be property stolen by the guest, if the innkeeper has no knowledge of that fact and receives it into his custody on the faith of the innkeeping relation.

\* \* \*

"In the case of Gordon v Silver, L. R. 25 Q. B. (1890) 491, 492, the court say: 'By the common law of England every person who keeps a common inn is under an obligation to receive and afford proper entertainment to every one who offers himself as a guest, if there be sufficient room for him in the inn, and no good reason for refusing him. The innkeeper is under an obligation to keep the goods of a guest received into the inn safely and securely, and can be sued and made liable in damages if he fails in this respect. As a compensation for the burden thus imposed upon him, the law has given him a lien upon the goods of the guest until he discharges the expenses of his lodging and food If the guest has brought goods to the inn to which he has no title, this will not deprive the innkeeper of his lien, because he is obliged to receive the guest without inquiries as to his title. It seems, therefore, that the lien is commensurate with the obligation to receive the guest and to keep safely and securely his goods. The right of lien of an innkeeper depends upon the fact that the goods came into his possession in his character of innkeeper, as belonging to a guest." Van Zile, §379, p. 375 and 377.

In discussing the definite question before us, which it will be remembered has never been specifically the subject of judicial pronouncement required by the facts in the case, the author expresses abhorrence of the full application of the rule to facts such as are involved in the instant case.

The writer is in accord with his reasoning and conclusions and adopts the language of the author in reaching a final determination of this cause.

"But where the guest has wrongfully possessed himself of the property, it would do violence to every principle of the rights of ownership of property to allow a lien to attach for the keep and entertainment of the guest at the inn, or for keep of the property whether animate or inanimate. As, for example, in case of stolen property, how can it be said that, consistently with the rights of ownership of property, a thief can steal and carry away the property of another, and although he has no title whatever that can be asserted against the rightful owner, yet he can by taking it to a hotel, and himself becoming a guest and failing to pay the compensation due the hotel keeper, confer upon the innkeeper a lien upon the property paramount to that of the absolute owner? Such a doctrine would violate every principle of right and justice and the laws governing the title to property.

"What becomes of that legal right which protects every man in the enjoyment of his own—that he may retake it wherever he may find it if he has been feloniously deprived of it? It is hardly an answer to say that because the innkeeper is by law compelled to receive a guest who comes to his inn, if he is a proper person and he has room and can take care of his baggage and property brought within the inn, that he is entitled to a lien upon the property he brings into the inn; for in this case it would be paramount to holding that he is entitled because of this to deprive a legal owner of his title to property which has been stolen by the guest. In connection with this contention it should be remembered that the innkeeper is not compelled to receive a guest and render service to him as an innkeeper and depend upon receiving compensation therefor when the guest shall leave his house; he may insist upon his legal right that the guest pay for the entertainment in advance. So it is not a case where the innkeeper's only relief is his right to a lien upon the property which the guest brings into the inn. In discussing this matter it would seem that a number of the courts have blindly followed the earlier English cases, without discussing the reason of the rule which they adopted; but adopting it rather by way of following adjudicated cases than by the exercise of good judgment.

"When we stop to consider that builded into that great fundamental law of the land, the constitution is the assurance to every citizen that he shall not be deprived of his property without 'due process of law', and that this bulwark of right cannot be set aside, altered or changed, either generally or specially, by courts or executive officers, or by legislatures, the rule under discussion and contended for by some of the English courts would seem to be utterly antagonistic to the rights of property vouchsafed to every American citizen. We are therefore, because of these observations, constrained to say that the law in

this country will not give to the innkeeper a lien for his compensation upon the property of third persons brought by the guest into the inn, except there exists a relation between the guest and owner like that of master and servant, principal and agent, or possibly bailor and bailee, and that at the time the guest be engaged in the use of the property in the carrying out of the particular relation; and that this applies as well to animate as inanimate property.

"We are aware that this English rule has been quite largely adopted by the courts of this country, but it seems to us that the arguments and reasoning of the court in arriving at a conclusion that even property which has been stolen and taken to an inn by a guest can be subjected to a lien of a landlord is not in accord with our American system; it certainly must be held to run counter to that provision of the constitution to which we have already called attention.

"The Court of Appeals in the state of Missouri have written somewhat vigorously upon this proposition. The opinion is by Mr. Justice Thompson. He says: 'Nor are we prepared to agree with those courts which have found a plain principle of justice in a rule of law by which one man's property is confiscated to pay another man's debts. It is, to say the least, doubtful whether the extraordinary liability which the common law imposed upon the innkeeper in respect of goods brought to his inn by his guest furnishes a good reason for such a rule. It is also doubtful whether such a rule is not in conflict with the spirit of those guaranties of the right of private property which are embodied in American constitutions. It would be beyond the power of the legislature to pass a law under which the property of one man should be arbitrarily taken from him and given to another man. If the legislature could not pass such a law, we are not prepared to sanction a course of reasoning by which the conclusion is arrived at that the legislature intended to preserve such a rule of the common law, by enacting a statute, the terms of which, read in accordance with their sense, import the contrary. Again, the liability of a common carrier at common law is precisely that of an innkeeper. He is liable for the loss or damage of the goods committed to him for carriage happening from every other cause except the act of God or the public enemy. Both the liability of the carrier and that of the innkeeper were grounded at common law upon what was

called the 'custom of the realm'. They were co-extensive with each other, had their origin in the same source, and rested upon the same consideration of public policy. And yet modern American courts have not hesitated to declare that a common carrier has no lien for the carriage of goods, which he has innocently received from a wrong-doer, without the consent of the owner, express or implied. Upon the whole, we are satisfied that the lien of an hotel or innkeeper does not exist in this state in such a case as the present.' Wykoff v Southern Hotel Co., 24 Mo. App. 382." §383, Id., p. 381, 382, 383, 384.

Attention has been called to the fact that the Missouri statute has been amended, giving hotels and innkeepers a lien on all property brought to the hotel by a guest either in his possession or under his control, and that, as so amended, such statute has been sustained as constitutional. L. E. Lines Music Co. v Holt, 332 Mo. 749. The guest in this case induced the plaintiff, a dealer in radios, to deliver one to his room in the hotel. The guest left shortly thereafter without paying his bill. The manager relied upon the radio for his lien. It will be noticed that here again possession was obtained from the owner with his consent. In determining the constitutionality of the section, the court cites National Malted Food Corporation v Crawford et, 254 Ill. App., 415, Baldwin Piano Co. v Congress Hotel et, 243 Ill. App., 118, and Halsey v Svitak et, 163 Minn. 253. In none of these cases is there any question of stolen property involved. The language of Justice Thompson is still appropriate in considering the effect of a statute extending a lien to inanimate stolen property. The common law in no reported case has gone so far. The claim that it has, can only be based upon obiter dicta. We are convinced that the legislature did not intend the language used in our statute to deprive the owner of his property—stolen from him—to pay the debt of the thief—though to a hotel which had given him entertainment, in reliance upon a lien which it could enforce upon his luggage. The innkeeper could have demanded his charges in advance and obtained protection. The owner has performed no act upon which the hotel keeper could rely as tending toward his disadvantage.

See also: McClain v Williams, 11 S. D., 227. (49 L.R.A., 610).

The broad language of the Ohio statute is not overlooked. This is manifest from the comment, supra. But the legislature

cannot be presumed to have intended to pass an act violative of all principles of justice. The words "under the control of his guests" cannot be extended to a control not conferred by some act of the owner. That such control was obtained by fraud may be conceded to be immaterial in sustaining the lien. But if no act of the owner gives the guest possession, he is guiltless of the slightest suggestion of cause for misconception or loss on the part of the innkeeper. The rule must not be extended further.

It is significant also that despite the broad statements of English and American courts, no case is found wherein the lien of the innkeeper has been sustained upon inanimate property which was stolen from the owner who lost possession without any act of his own, whether induced by fraud or not.

It is claimed that the affidavit tendered by the plaintiff in the replevin suit was defective in that the notary who signed the affidavit was also upon the bond. It does not appear that at the time the affidavit was made the notary signed the bond or that the bond had been received.

The judgment of the Court of Common Pleas is, therefore, affirmed.

HAMILTON, J, concurs.
MATTHEWS, J, dissents in separate memorandum.

## DISSENTING OPINION

By MATTHEWS, J.

In the opinion of the court just announced there is assembled an unusual array of authorities indicating their views on the true rule of the common law on the subject of an innkeeper's lien on luggage brought to the inn by a guest and accepted by the innkeeper in that relation. On this evidence the court properly draws the conclusion that "it is clear that at common law a lien may be claimed by the innkeeper upon the property of the guest, even though the same may have been stolen from a third person, especially if the innkeeper is ignorant of the theft." Indeed the court might have said that for at least two hundred years there has been complete unanimity among jurists and authors of legal text-books on this subject. The court says, however, that in cases in which judges have made this statement the real owner had "invariably" given possession of the goods to the guest "although in some cases, through fraud or swindle." The cases, however, were not decided on that distinc-

tion. Pointing out that distinction may weaken those cases as authorities, but it presents no evidence that the rule was to the contrary.

That such was the common law rule is conceded by all the authorities including Van Zile on Bailments, whose reasoning is followed by the court in reaching its conclusion against the lien. Van Zile quotes extensively from Wyckoff v Southern Hotels Co., 24 Mo. App. 382, in setting forth his views as to the inherent injustice of the common law lien of an innkeeper on stolen property. That case did not involve the common law at all. Missouri had enacted a statute on the subject and it was that statute that was under construction. That statute provided that innkeepers should have a lien upon "the baggage and other valuables of their guests or boarders brought into such hotel." It also gave the innkeeper a lien upon the wages of the guest and in other ways enlarges the rights of the innkeeper and provided remedies unknown to the common law. In construing this statute the court considered the state of the law in the absence of any statute, in other words, the common law, and at page 386 said that at common law the innkeeper had a lien on the goods brought to the hotel by the guest "although the goods may have been the property of some third person, provided the innkeeper was not aware that the goods were not the property of the guest." And at page 387 said: "Such being undoubtedly the common law, the only remaining inquiry is whether our statute relating to the lien of hotel, inn and boarding house keeper was designed to restrict the common law rule." The court then held that it was so designed. It was in that connection that the court used the language quoted in the opinion of the court expressing the view that the common law rule did not conform to plain principles of justice and doubting the constitutionality of such a rule.

Apparently the legislature of Missouri did not agree with the court in Wykoff v Southern Hotel Co., supra, because it amended the law as construed in that case so as to reinstate the common law rule. It was the new statute that was assailed on the ground that it was unconstitutional in Lines Music Co. v Holt, 332 Mo. 749, 60 SW (2d) 32; 61 SW (2d) 326. The court had no difficulty in sustaining the constitutionality of the statute.

Van Zile cites from other cases apparently as supporting his text. Not one of them involved an innkeeper's lien. Each of them involved the question of whether

a wrongdoer could confer a lien upon property not owned by him in favor of a common carrier. In none of them is there a denial of the common law rule in favor of an innkeeper. Those cases do hold that at common law a person having no title and representing no one having title could not confer a lien upon a common carrier.

But we are only incidentally concerned with the common law rule because there is an Ohio statute covering the subject. As is said by the court this statute is couched in "broad language." It is §3984 GC, in which it is enacted that the lien of the innkeeper shall cover "the baggage or other property in and about such inn belonging to or under the control of his guest."

In Thoma v Remington Typewriter Co., 11 C.C. (n.s.) 174, it is said that this statute is declaratory of the common law. If so, it confers a lien, even though the goods had been stolen, provided the innkeeper had not become a party to the crime by receiving them, knowing them to have been stolen.

Without considering the common law in construing this statute, what is the natural import of the words used? In Webster's New International Dictionary "Control" is defined as "To exercise restraining or directing influence over; to dominate, regulate; hence to hold from action; to curb; subject; overpower." There is no element of consent or permission or lawfulness in this definition. It repels the suggestion that any such element is necessary. If the legislature had intended to limit the lien to property owned by the guest, it would not have included the disjunctive "or" followed by the phrase "under the control" of the guest. If such is the intent, those words are entirely superfluous.

It is conceded that the phrase has some meaning, but that it should be limited to goods under the control of the guest by and through the consent of the real owner. No such qualifying phrase is found in the statute, and to so limit the meaning seems to me to be judicial legislation. Property taken and carried away by a thief is just as much under the control of the thief as property obtained and carried away by a swindler; and it is conceded that a swindler could confer a lien upon an innocent innkeeper. While an owner in possession may use force in defending his possession, and may likewise use force in the immediate recapture of property, he may not use force to recover his property even from a thief who has carried it from his presence. In such case, his recourse must be to the courts. He is in the same position as the defrauded

person in that respect. 2 R.C.L. 560. And, in the meantime, the property is "under the control" of the thief or swindler, and by the words of the statute the innocent innkeeper has a lien upon them, if he receives them into his inn in that capacity. Of course if he knows the property is stolen, he could not receive it in the relation of innkeeper to his guest. His status in that situation is fixed by law as an accessory after the fact to a crime,—as a receiver of stolen property. An innkeeper has no more right to violate the criminal law than any one else. We are not presented here with that sort of a case.

In the situation created by a thief or swindler who passes the property on to an innocent third person, a problem is presented where one of two innocent persons must suffer. It is fairly debatable which, if either, occupies the better position on fundamental principles of justice. If one must suffer, the determination of which one might properly be made to revolve on the question of the best interest of society. The decision of that question is a matter of policy to be determined primarily by the legislature and, if determined by it, the courts have no right to question the wisdom of the decision. It is only when the legislature has not spoken that the courts have a right to consider the question of public policy.

In the wisdom of the legislature the common law as found in text-books and opinions of courts may be permitted to control the conduct of persons; it may place the common law rule in the form of a statute, or it may by statute enact a different rule. That is governing. In Mondou v New York, N. H. & H. R. Co., 223 U. S. 1, 38 L.R.A. (n.s.) 44, the court at page — says:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

Whenever one of two innocent persons must suffer a hardship necessarily must result, no matter what rule is adopted. The

legislature has said by §5984, GC, that as between the innocent owner and the innocent innkeeper sound public policy requires that the claim of the latter should prevail. It has an abundance of historic precedent for its decision. The courts have no right to disturb it.

For these reasons, I do not concur in the judgment of affirmance.