### In Re FLUE GAS RESOURCES, INC., Debtor.

#### Bankruptcy No. 87–00220.

United States Bankruptcy Court, N.D. Ohio, W.D.

Aug. 12, 1987.

Edward F. Zoltanski, Toledo, Ohio, trustee, in bankruptcy.

R. Timothy Bauer, Toledo, Ohio, for debtor.

Ruth Meacham, Toledo, Ohio, for Thermodyn Corp.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Objection of Trustee to the Claim of Thermodyn Corporation. A Hearing was held on this matter, at which time the parties agreed that the issue presented was solely a question of law. Accordingly, counsel filed their arguments on the relevancy and application of O.R.C. § 1333.31 to the instant case. The Court has reviewed the written arguments of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the Trustee's Objection should be Denied.

### FACTS

The facts in this matter do not appear to be in serious dispute. On February 4, 1987, Flue Gas Resources, Inc. (hereinafter "Flue Gas") filed a voluntary petition under 11 U.S.C. Chapter 7. Thermodyn Corporation (hereinafter "Thermodyn") is a creditor of Flue Gas, and filed a proof of claim in this case for Thirty-six Thousand Four Hundred and Fifty Dollars and Sixty-nine Cents ($36,450.69). This debt arose from the fabrication and sale of various molds to Flue Gas, and for the fabrication of parts using the molds. The Debtor owed Thermodyn a balance of at least Twenty-seven Thousand Two Hundred and Twenty-six Dollars and Seventy-nine Cents ($27,226.79) for the fabrication of the rubber parts, and Five Thousand Four Hundred Dollars ($5,400.00) for making the molds.

The molds were manufactured for Flue Gas by Thermodyn between March 21, 1985 and August 15, 1986. Subsequent to the filing of the Chapter 7 petition and more

than sixty (60) days after the last payment was due on the molds, Thermodyn served upon the Trustee a "final notice". The "final notice" contained a request for payment, along with an itemized statement of the amount due, and a description of the molds involved. Also included was a statement that unless the amount due and the cost of the notification was paid within thirty (30) days, Thermodyn would retain the molds and proceed to enforce its lien rights under O.R.C. § 1333.31. It should be noted that Thermodyn has, at all times, maintained exclusive possession of the molds.

On March 30, 1987, the Trustee Objected to Thermodyn's claim of a molder's lien.

### LAW

Ohio's molder's lien statute is set forth in § 1333.29 through § 1333.31 of the Revised Code. O.R.C. § 1333.31(A) states in pertinent part:

(A)(1) A molder has a lien on a die, mold, pattern, or form that is in his possession and that belongs to a customer, for the following:

(a) The amount due from the customer for plastic, metal, paper, china, ceramic, glass, or rubber fabrication work performed with the die, mold, pattern, or form, or for making or improving the die, mold, patterns, or form;

(b) The cost associated with the notification described in division (B) of this section;

The Trustee does not dispute that, under § 1333.31, Thermodyn has a lien on the molds in its possession for the amounts due for the fabrication of the molds and the work performed with the molds. The Trustee's position is that the lien was unperfected at the time of the filing of the petition, and was therefore avoidable under 11 U.S.C. § 545(2) which provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien— ·

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

Or, as is stated in Collier's:

Section 545(2) requires perfection of the lien and establishes, essentially, a bona fide purchaser of property subject to the lien, test to determine perfection.

This test states, first of all, that for a statutory lien to be valid against the trustee it must be perfected or enforceable against one acquiring the rights of a bona fide purchaser of property subject to the lien, whether or not such a purchaser actually exists, at the time of the commencement of the case.

4 *Collier on Bankruptcy* § 545.04[2] at 545–18 (15th ed. 1987). *See also, Lincoln Nat. Bank v. Conti,* 27 B.R. 175 (Bankr.S. D.Ohio 1982). Alternatively, the Trustee cites § 547(b)(6).

Thermodyn contends that the lien cannot be avoided under § 545(2) because it was perfected by possession. The Trustee asserts that the lien was not perfected, there being additional actions required under the statute prior to enforcement. Specifically, the Trustee argues that the "final notice", which is to be sent within sixty (60) days of the due date of the final payment, is the act that results in the lien being perfected. It is the Trustee's position that the statutory requirements should be strictly construed. Further, the Trustee points out that there is no provision in § 1333.31 allowing the "final notice" to relate back to the period prior to the bankruptcy filing.

Therefore, the issue before the Court is whether Thermodyn's § 1333.31 molder's lien was unperfected, or perfected by possession. There does not appear to be any Ohio cases construing § 1333.31, nor has any other state construed its molder's lien statute in a published Opinion. There also appears to be a paucity of legislative history concerning this particular Ohio statute. Thus, the Court must turn to the general rules of construction of lien statutes, and examine the purposes behind the legal concept of perfection.

The molder's lien statute gives the molder a lien based on possession of the mold.

To enforce the lien through a sale of the molds, the mold maker must follow certain requirements listed in the statute. In construing § 1333.31, it should be noted that courts have held that a statutory lien exists independent of the various means of enforcement the statute permits. *Moses v. Labofish*, 132 F.2d 16, 17 (D.C. Cir.1942); 51 Am.Jur.2d, *Liens* § 39.

█ In the case at bar, the lien is a "specific lien" because it is for a claim due in relation to that property upon which the lien attaches, rather than for an unrelated general balance. 66 O.Jur.3d, *Liens* § 3. "Specific Liens" are favored by the law, and should be sustained whenever it is possible to do so without violating positive law. 66 O.Jur.3d, *Liens* § 4; 52 Am. Jur.2d, *Liens* § 11.

█ Further, a statutory lien which is declaratory of a common law lien, and is not in derogation of it, must be given such construction as will give the lien claimant the full limit of the security intended to be provided by the legislature. *M & M Hotel Co. v. Nichols* 5 Ohio Op. 387, 388–389, 32 N.E.2d 463 (1935); 66 O.Jur.3d, *Liens* § 28. It appears to the Court that the molder's lien is a codification of a common law artisan's lien, and therefore should be given a liberal construction under Ohio law. Such a construction would lead the Court to find that the possession of the molds is the act which perfects the lien, rather than the mailing of the "final notice" to the customer. Moreover, this finding would be consistent with the general rule that a lien which is declaratory of the common law must be interpreted in conformity with common law principles. 51 Am.Jur.2d, *Liens* § 38. Under the common law, superior rights were typically obtained through possession of the property.

█ The Ohio Courts have also looked at the policy conflict between an artisan's or mechanic's interest in recovering fair compensation through the use of liens, and the interest in keeping goods moving in the free flow of commerce in conjunction with the interests of third parties who purchase or lease liened property. *Church v. Bill Swad Leasing* 2 Ohio App.3d 382, 442

N.E.2d 78 (1981). The accommodation of these competing principles is achieved by requiring notice, in a public manner, of any lien that is going to defeat the claim of a bona fide purchaser. To clarify, this discussion is in connection with the interpretation of § 1333.31, and whether the lien given by the statute was perfected by possession. It is state law which creates and defines property interests. *Butner v. United States* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Trustee will not have notice imputed to him, under § 545(2), by Thermodyn's possession. Rather, the Court believes that the legislature intended that the molder's lien be perfected by possession, and it is the perfected status of the lien which prevents the Trustee from avoiding it under § 545(2).

█ Even more fundamental to the Court's decision is the practical effects of the two different acts that the parties claim should result in the lien being perfected. Even if there were no presumptions favoring the particular lien involved, the Court would have to look at which act, as a practical matter, was actually giving notice to the world of the molder's security interest. Although the statute provides for a "final notice", it only goes to the customer. The "final notice" would not provide notice to a bona fide purchaser. The act which prevented the molder's lien from being a "secret lien" was the possession of the molds by the mold maker. Therefore, as perfection is a concept based upon the idea of providing general notice of lien interests, and possession was the act which provided that notice to third parties under § 1333.31, the Court finds that the lien was perfected by possession.

█ Therefore, a molder's lien being perfected by possession, and it being undisputed that Thermodyn has been in continuous possession of the molds in question, it follows that the Trustee cannot avoid Thermodyn's lien under 11 U.S.C. § 545(2). However, one problem remains. Section 1333.-31(B) outlines the procedures to be followed for the sale of the molds. Under that subsection, the molder "may" send a

"final notice" to the customer within sixty (60) days from the due date of the final payment on the molds. While this "final notice" is permissive, (the statute using the word "may"), it appears that the sending of a "final notice" is required before the molds are sold under the provisions of § 1333.31(B). On the other hand, prior to subsection B's detailing of the molder's right to sell, § 1333.31(A) gives the mold maker the right to retain possession of the molds until full payment is made.

(2) Except as provided in division (C) of this section, the molder may retain possession of the die, mold, pattern, or form until the customer pays all applicable monetary amounts described in division (A)(1) of this section or the die, mold, pattern, or form is sold in accordance with this section.

Under the above provision, Thermodyn may be left with only a perpetual right to retain possession of the molds. They can never sell in accordance with section 1333.-31 because they have missed the sixty (60) day deadline, and Flue Gas will not pay the amounts due. The Court will restrain its enthusiasm for an exploration of the applicability of the Rule Against Perpetuities to personal property, and instead will consider an equitable remedy to this problem. If Thermodyn is denied the right to sell the molds, they would appear to have little choice but to resort to some subterfuge such as a lease for an extended period, or seeking a lien for storage upon which they could execute. Such a course would not benefit anyone. Therefore, there appearing to be no strong public policy which would be violated by permitting the sale of the molds, and equity allowing a remedy to be crafted, the Court will allow the sale of the molds by Thermodyn. If the molds sell for more than the amount of Thermodyn's lien, then, as called for by § 1333.31, the surplus shall go to the Trustee as the successor in interest to the customer.

Therefore, it is

ORDERED that the Trustee's Objection be, and is hereby, DENIED.

It is FURTHER ORDERED that Thermodyn be, and is hereby, allowed to sell those molds fabricated for Flue Gas Resources, Inc. which remain in Thermodyn's possession.

It is FURTHER ORDERED that if the sale of the molds generated funds which are over and above the amount of Thermodyn's lien, that those funds be turned over to the Trustee of the Flue Gas bankruptcy estate.