LINCOLN NATIONAL BANK, Plaintiff,

v.

Thomas D. CONTI, Mary Sonya Conti, Jack F. Pickrel, Trustee, Defendants.

In the Matter of Thomas D. CONTI, Mary Sonya Conti, Debtors.

Bankruptcy No. 3–82–02841.
Adv. No. 3–82–0816.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 28, 1982.

Gary E. Susser, Dayton, Ohio, for plaintiff.

Jeffrey P. Albert, Dayton, Ohio, for debtor/defendant.

Jack F. Pickrel, Dayton, Ohio, for trustee/defendant.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the court upon the pleadings and evidence adduced at trial on 10 January 1983.

Defendants/Debtors filed a petition for an order for relief on 8 October 1982. On this date they had possession of a 1978 Dodge Van and the Ohio Certificate of Title upon which there were noted no liens or encumbrances. Jack F. Pickrel, Trustee in Bankruptcy (Trustee), took possession of the vehicle, and still has possession. The Ohio Certificate of Title had been issued on 20 January 1981 in the name of "Thomas and or Mary Conti."

Plaintiff Lincoln National Bank (the Bank) had loaned the funds on or about 21 September 1978 to the Conti's to purchase the vehicle in Indiana; and, an Indiana Certificate of Title was issued to "Thomas and or Mary Conti with Full Rights to Survivorship" on or about 26 September 1978 duly noting the Bank as "first lien holder." This lien was duly released on the title on 15 January 1981. The loan was rewritten on 14 May 1982 at the request of Debtors, but the lien never noted on the Ohio Title. The refinancing note was for $5,004.30 including a "finance charge" of $1,163.49.

The Bank officer testified that release of lien and surrender of the Certificate to the owners is the accepted practice in Indiana to enable a borrower to obtain a new certificate of title in another state, with the understanding that the lien will be noted on the new certificate, which is to be delivered to the lending institution.

Mr. Conti, in the process of moving from Indiana to Ohio, then obtained what he thought was a "transfer" of title to Ohio. He signed under oath a title application form supplied by a title clerk which recited in effect that there was no outstanding lien on said vehicle. He testified he did not read the form, and denied any intention to defeat the secured debt of the Bank. In fact, the Debtors made their regular monthly payments until they decided to file in bankruptcy. Mrs. Conti handled the payment of the family debts, and did not have any thought that the payment need not be paid.

The original Indiana Certificate of Title is on file in the office of the Clerk of Common Pleas Court, Montgomery County, Ohio, bearing the release of lien on January 15, 1981, executed by the Bank, on its face. On the reverse side, the "Assignment of Title" space provided is not filled in or completed in any fashion. Spaces are provided for the "Purchaser's Name" and address, and blank lines provided for the signature of "seller(s)." A box provided on the lower corner of the "assignment Form" is filled in with an unsigned recitation that "Vehicle is Subject To Lien in Favor of" Lincoln National Bank.

The following notice was served upon the Trustee on or about 27 October 1982, to-wit:

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OHIO
WESTERN DIVISION

| IN RE: | * | CASE NO. 3–82–02841 |
|---|---|---|
| THOMAS CONTI | | |
| SSN 163–42–2995 | * | |
| MARY SONYA CONTI | | |
| SSN 499–58–7342 | * | NOTICE TO TRUSTEE |
| Debtor | | |

Now comes Creditor, Lincoln National Bank, by and through counsel, and hereby provides notice to Trustee, pursuant to 11 U.S.C. Section 546(b), that they intend to protect their security interest in the 1978 Dodge van bearing serial number B21BF8X208374 now in the possession of Debtor.

Creditor relies upon Article IX, Section 305 of the Uniform Commercial Code regarding when a secured party may use possession to protect a security interest in certain goods without the necessity of filing a security interest.

Lincoln National Bank hereby gives notice to Trustee that the Trustee is now duty bound to exercise reasonable care in the protection of the collateral. Pursuant to the Debtor's exam of Wednesday, October 27, 1982, the Vehicle in question is being used daily by the Debtor and is *uninsured*. Pursuant to the Proof of Claim filed by Creditor on this date, the total amount of the debt owed to Creditor on the 1978 Dodge van is $4,674.30

WHEREFORE, Creditor demands that this Trustee immediately seize the 1978 Dodge van or permit the agents of Creditor, Lincoln National Bank, to seize same on this date of filing.

Respectfully submitted,
[signed]_____
Gary E. Susser
Counsel for Creditor

SLICER, HALL & SLICER
2040 One First National Plaza
Dayton, Ohio 45402
513/228-4500

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was mailed by United States Mail, postage prepaid, and/or hand delivered to Jeffrey Albert, attorney for Debtor, on this ____ day of October, 1982 and to Jack Pickrel.
[signed]

_____
Gary E. Susser

DECISION

The Bank seeks either to have the motor vehicle surrendered by the Trustee or, in the alternative, that Defendants be denied a discharge for a violation of 11 U.S.C. § 523(a)(2)(A) and a judgment granted for $3,946.12, plus interest and costs.

I

The Bank seeks possession of the vehicle from the Trustee, claiming a security interest. In this regard, it is argued:

"LAW: It is well established that the Trustee's rights and powers are limited by Section 546. If an interest holder against whom the Trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien, then he may perfect his interest against the Trustee. If applicable law requires seizure for perfection, then perfection is by notice to the Trustee instead. Pursuant to Section 305 of Article IX of the U.C.C., a security interest in goods may be perfected by the secured parties taking possession of the collateral. This method of perfection of a security interest without the necessity of filing inures to the benefit of this Plaintiff who could not take possession of the vehicle once the provisions of the automatic stay were invoked by the Debtors filing the bankruptcy petition. Inasmuch as the Plaintiff/Creditor has perfected his purchase money security interest in the automobile in question, Plaintiff takes priority over the Trustee in Bankruptcy and is entitled to the return of the subject motor vehicle."

No case precedents have been cited for this proposition.

The Trustee counters by urging "the status of an execution creditor with priority over all other unperfected lien interests." He further argues that there is no perfected lien because of the provisions of Ohio Revised Code § 1309.03(A)(4)(a) and (b), and (C)(5). [sic]

11 U.S.C. § 544(a)(1) and (2), a trustee's proverbial "strong arm" lien, very definitely establishes the status of the Trustee herein. The Trustee's avoidance powers are no longer subject to any questions of the application of the doctrine in *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1934) under Section 544. The status being unimpeachable the applicable non-bankruptcy law section of the Ohio Revised Code (U.C.C. 9–103) for determination of the Bank's rights as cited by the Trustee merely bolsters his status under state law, although he has inadvertently referred to the wrong subdivision (which is correctly subdivision (B) rather than (A)). Section 1309.-03(B)(2) provides as follows:

(2) Except as otherwise provided in this division, perfection and the effect of perfection or nonperfection of the security interest are governed by law, including the conflict of laws rules, of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

The provision of 11 U.S.C. § 546 as cited in behalf of the Bank is not applicable.

■ Section 546 pertains to both judgment lien creditors and bona fide purchasers whose interests arose pursuant to bankruptcy law. There must be applicable state law establishing a period between the creating of a lien and the time when perfection is permitted under local law, such as found in § 1309.20 Ohio Revised Code (U.C.C. 9–301) as to purchase money security interest perfection within 10 days after the debtor obtains possession of the collateral. See *In re Federal's Inc.,* 553 F.2d 509 (CA 6, 1977) re discussion of whether the 10-day reclamation right constitutes an invalid state statutory lien in bankruptcy. 11 U.S.C. § 545 establishes criteria to establish the priority of certain such statutory liens, and must be read in *pari materia* with Section 546.

■ Looking to 11 U.S.C. § 545(2) the Trustee may even avoid the fixing of a statutory lien on property of the debtor to the extent such lien is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser whether or not such a purchaser exists. Ohio Revised Code Section 1309.20 (U.C.C. 9–301) specifically subordinates unperfected security interest to the lien rights of a trustee in bankruptcy from the date of the filing of a petition.

■ Assuming the converse, *arguendo,* that Section 546 could now be applied, on equitable grounds, the rights of judgment lien creditors and bona fide purchasers could not be questioned on the facts which demonstrate that the Bank neglected to rectify its acts of both releasing its lien and of surrendering possession, from January 15, 1981 until October 8, 1982, when the Trustee's rights vested and despite a refinancing note on May 14, 1982. Hence, it was not in truth the automatic stay which interfered with lien perfection, even if the 4-months provision in the Uniform Commercial Code did not apply.

## II

The facts *instanter* as analyzed in connection with the claimed nondischargeability of a debt are not so unequivocal. The Debtors did testify briefly and with utmost candor as to executing the Application for Certifi-

cate of Title under oath representing that there were no outstanding liens on the vehicle.

Unfortunately, no defense based upon applicable legal principles has been presented, either at the trial or by posttrial brief in behalf of Debtors. Their Answer to the complaint seems to be in conflict with their brief testimony denying any harmful intent in obtaining an Ohio title free of the Bank's lien. They affirmatively "deny the Plaintiff had any security interest on October 27, 1982 to perfect." They further affirmatively plead "that Plaintiffs are an unsecured creditor" and assert a $2,000.00 exemption in the property under Ohio Revised Code Section 2329.66(A)(2) "as joint owners of the subject vehicle."

Plaintiff argues that the Defendants have violated 11 U.S.C. § 523(a)(2)(B), citing *In re Houtman,* 568 F.2d 651 (9th Circuit, 1978). This case is in accord with the holding under § 14 of the Bankruptcy Act in *Marimura, Arai & Co. v. Taback* (1929) 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586, that "reckless indifference to actual facts" is equivalent to an intentional misrepresentation.

The Debtors not only obtained an Ohio title without a notation of lien; but, also, did not return the title to the Bank as the condition under which they obtained possession of the Indiana title with the lien released. Obviously, however, when they signed the sworn application that there was no lien, this was a technically true statement of record.

Before reaching the question of Debtors' intention in not returning the title, nevertheless, another factor intersects. There is no evidence that Plaintiff relied on the failure to return or that any such reliance was reasonable or justifiable under the circumstances. The Defendants did not abscond or secrete the collateral. Then, in May, 1982, they renegotiated a new obligation with the Bank and executed a note and security agreement through the "main of-

fice" of the Bank. These facts not only negate any imputed *scienter* to Defendants, but negate any reasonable reliance by the Bank which prevented it from renewing its lien on the title, as required by both the Indiana and Ohio statutes. The Debtors did not and could not at this juncture deceive them or prevent lien perfection.

### III

Concluding that the Trustee's lien and title is superior to any claimed lien by the Bank should not and does not make the property available to the Debtors as exempt from the claims of creditors. Such a conclusion would add insult to injury to the Bank, despite its derelictions and failures in perfecting a security interest before bankruptcy and before the Trustee's lien vested.

The Debtors cannot profit by their own dereliction, even though not intended. It is important to note that they did in good faith execute a promissory note on May 14, 1982, to the Bank and in connection therewith granted a security agreement on the collateral now claimed as exempt. As between the Bank and the Debtors, this agreement precludes any claim of exemption as a contractual lien *inter sese.*

It must be concluded, therefore, that 11 U.S.C. § 522(c)(2) as to non-liability of exempt property cannot be controlling, even if it had been asserted by Debtors. As to the Debtors, "The bankruptcy discharge will not prevent endorsement of valid liens." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 361, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6317, 9 Bkr.L.Ed. § 82:17, page 373. For an application of the doctrines of unjust enrichment to deny an exemption claim, see *In re Taylor,* 8 B.R. 806, 7 B.C.D. 317 (Bkrtcy.D.C.1981). If the Trustee had abandoned the vehicle claimed as exempt as no benefit to the estate, the Bank could have as a matter of equity claimed its lien on the property. It would be incongruous to condone assertion of an

exemption as to property in the bankruptcy estate because of Debtors' misdeeds and thereby effect an unjust enrichment to the Debtors merely on the existence of a superior lien by operation of law in the Trustee. The "strong arm" clause in such a situation merely treats the Bank's equitable lien as a junior lien to the Trustee. The discharge in bankruptcy under such circumstances is effective only as to the personal liability of Debtors.

Even though Debtors are not denied a discharge, such does not render them blameless and immune from restitution for property to which they made a claim. Without laboring the equities, it is merely noted that, "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." See 66 Am.Jur.2d, Restitution and Implied Contracts, §§ 3, 4–10. The equitable jurisdiction of bankruptcy courts must encompass such principles in allowing statutory exemptions to Debtors. In summary, even though the loan contract is deemed discharged, in equity there would be an implied contract to save the Bank harmless by the Debtors for preventing the prebankruptcy lien perfection.