## In re OUTBOARD MARINE CORPORATION, et al., Debtors.

**Bank of America, N.A., successor in interest to Bank of America, N.A., formerly Nationsbank, N.A., in its capacity as Prepetition Agent Dip Agent, Plaintiff,**

v.

**Outboard Marine Corporation, et al., Defendants.**

**Federal–Mogul Corporation, Counter–Plaintiff,**

v.

**Bank of America, N.A., successor in interest to Bank of America, N.A., formerly Nationsbank, N.A., in its capacity as Prepetition Agent Dip Agent, Counter–Defendant.**

Bankruptcy No. 00–B–37405.
Adversary No. 01–A–00471.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 29, 2004.

Charles B. Leuin, Jenkens & Gilchrist, PC, Chicago, IL, for Plaintiff.

Julie C. Keller, Dykema Gossett PLLC, Chicago, IL, Margaret A. Costello, Detroit, MI, for Defendant.

Kathleen H. Klaus, Janice Alwin, Shaw Gussis, Fishman, Glantz, Wolfson & Towbin, LLC, Chicago, IL, for Trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on two motions. First, Counter–Plaintiff Federal–Mogul Corporation ("Federal–Mogul") has moved for partial summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 on the complaint filed by Counter–Defendant Bank of America, N.A. (the "Bank"), seeking a determination of the validity and priority of a lien in the proceeds of certain tooling that Outboard Marine Corporation and its related debtor entities (collectively, "OMC") sold to Bombardier Motor Corporation of America ("Bombardier"). In addition, the Bank has moved to strike portions of the affidavit of Richard Harvey, which was submitted in support of Federal–Mogul's motion for partial summary judgment.

For the reasons stated herein, the Court finds that Federal–Mogul failed to assert its lien according to the notice requirement set forth in the relevant Indiana Fabricator's Lien Statute and that, therefore, Federal–Mogul is not entitled to judgment in its favor as a matter of law. Accordingly, the Court denies Federal–Mogul's motion, and its third affirmative defense is dismissed. Further, the Court grants the Bank's motion to strike portions of Harvey's affidavit. In so doing, the Court strikes the last sentence of paragraph 7 of the affidavit, the corresponding assertion in paragraph 7 of Federal–Mogul's 7056–1 statement, and the language in paragraph

10 of the affidavit which refers to "the customs in Federal–Mogul's industry."

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### II. APPLICABLE STANDARDS

#### A. Summary Judgment

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). See also Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 402 (7th Cir.1998).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. Trautvetter v. Quick, 916 F.2d 1140, 1147 (7th Cir.1990); Farries v. Stanadyne/Chi. Div., 832 F.2d 374, 378 (7th Cir.1987) (quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the

moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710,* 153 F.3d 774, 777 (7th Cir.1998). In 1986, the United States Supreme Court decided a trilogy of cases which encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. 1348.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.,* 231 F.3d 1060, 1065–66 (7th Cir.2000); *Szymanski v. Rite–Way Maint. Co.,* 231 F.3d 360, 364 (7th Cir.2000).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh),* 165 B.R. 203, 213 (Bankr.N.D.Ill.1993) (citation omitted).

Rule 56(d) provides for the situation when judgment is not rendered upon the whole case, but only a portion thereof. The relief sought pursuant to subsection (d) is styled partial summary judgment. Partial summary judgment is available to dispose of one or more counts of the complaint in their entirety. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir.1959);

*Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216–17 (7th Cir.1946); *Quintana v. Byrd,* 669 F.Supp. 849, 850 (N.D.Ill.1987); *Arado v. Gen. Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985); *Capitol Records, Inc. v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985); *Strandell v. Jackson County, Ill.,* 648 F.Supp. 126, 136 (S.D.Ill.1986); *In re Network 90 Degrees, Inc.,* 98 B.R. 821, 831 (Bankr.N.D.Ill.1989). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records,* 106 F.R.D. at 29. In the case at bar, Federal–Mogul seeks partial summary judgment as its motion relates only to the third affirmative defense asserted in its answer.

Local Bankruptcy Rule 7056–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056–1.

Pursuant to Local Bankruptcy Rule 7056–1, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056–1 statement"). The 7056–1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056–1B.

Federal–Mogul filed a 7056–1 statement that fully complies with the Rule. It includes numbered paragraphs establishing undisputed facts with specific references to accompanying exhibits, as well as the affidavit of Richard Harvey ("Harvey"). Harvey is the technical director at Federal–Mogul's technical center in Logansport, Indiana. Harvey Aff. at ¶ 1. He claims to have personal knowledge about the products that Federal–Mogul makes and improves; its manufacturing operations; and the subcontractors, suppliers, and other third parties with which it does business. *See id.* at ¶¶ 1–5 and 8–10.

Specifically, Harvey states that Federal–Mogul regularly manufactures, assembles, and improves—and arranges for the manufacture, assembly, and improvement of—dies, molds, forms, jigs, and patterns, as well as the products made from them, for its customers. *Id.* at ¶ 2. According to Harvey, in or around January 1998, OMC contracted with Federal–Mogul to make various dies, molds, forms, jigs, and patterns (collectively, the "Tooling") and to manufacture parts and products using this Tooling (the "OMC Products"). *Id.* at ¶ 3. He avers that, subsequently, Federal–Mogul did indeed manufacture and assemble both the Tooling and the OMC Products using the Tooling. *Id.* at ¶¶ 4–5. Citing the purchase orders placed by OMC (copies of which are appended as Exhibit 2 to his affidavit), Harvey claims that Federal–Mogul is owed $2,251,903.29 for the Tooling, as well as the OMC Products made with the Tooling. *Id.* at ¶¶ 6–7. He further states that Federal–Mogul subcontracted some of the work to its subcontractors and suppliers. *Id.* at ¶ 8. Finally, Harvey asserts that either Federal–Mogul or one of its suppliers was in actual possession of each item of Tooling, that Federal–Mogul retained control at all times over the Tooling in the possession of its suppli-

ers, and that it intended to retain its claimed lien on the Tooling in either its possession or that of its suppliers. *Id.* at ¶¶ 9–10.

The party opposing a summary judgment motion is required by Local Rule 7056–2 to respond ("7056–2 statement") to the movant's 7056–1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056–2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 7056–2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056–1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056–2B.

The Chapter 7 Trustee for OMC has filed a response in opposition to Federal–Mogul's motion but has failed to file a corresponding 7056–2 statement pursuant to the Rule. Instead, the Trustee notes that "[f]or purposes of this Motion, only, the Trustee does not dispute any of the facts alleged in Federal–Mogul's ... 7056 Statement of Uncontested Facts." Trustee's Resp. at 2, n. 1.

Although the Bank has complied with the Rule's procedural directives, the Bank's 7056–2 statement appears to have lost its way, focusing not on the motion at bar but, instead, on a completely collateral issue. In addition to a "Statement of Additional Material Facts," its response contains numbered items, corresponding to each paragraph in Federal–Mogul's 7056–1 statement. However, rather than including references to supporting materials relied upon as required under the Rule, the Bank erroneously and disingenuously focuses its efforts on the alleged insufficiency of Federal–Mogul's submitted evidence.

In denying virtually every one of Federal–Mogul's allegations, the Bank relies on the affidavit of John N. Schwartz ("Schwartz"). Schwartz is one of the attorneys who represents the Bank in this adversary proceeding. Schwartz Aff. at ¶ 2. Instead of concentrating on the issue in question before the Court—the validity and priority of Federal–Mogul's alleged lien—Schwartz's affidavit contends solely that Federal–Mogul has failed to fully respond to the Bank's discovery requests. *Id.* at ¶¶ 8–9. Specifically, Schwartz claims that Federal–Mogul has not produced documents and information in response to the Bank's requests, including documents related to OMC's debt, those showing a breakdown of charges related to the production of both the Tooling and the OMC Products manufactured with the Tooling, documents used to create spreadsheets identifying the location of the Tooling, and those showing how various costs correspond to various projects. *Id.* at ¶ 8.

Summary judgment may be granted if the non-moving party has had adequate time to conduct discovery. *See Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir.2001) (citations omitted). "[T]he issue of [the] adequacy of discovery before summary judgment is committed to the discretion of the trial court." *Cohen v. Ayers*, 596 F.2d 733, 743 n. 20 (7th Cir.1979). The fact that discovery is not complete, however, does not necessarily defeat a motion for summary judgment. *Am. Nurses' Assoc. v. State of Ill.*, 783 F.2d 716, 729 (7th Cir.1986).

Nevertheless, discovery is ardently favored before summary judgment is granted. *Bryant v. O'Connor*, 671 F.Supp. 1279, 1282 (D.Kan.1986) (citation omitted).

A party that cannot present specific facts in opposition to the motion may avert summary judgment by filing an affidavit pursuant to Federal Rule of Civil Procedure 56(f). Fed.R.Civ.P. 56(f). However, "[b]are assertions under Rule 56(f) may not forestall a motion for summary judgment." *Bryant*, 671 F.Supp. at 1282 (citation omitted). Further, the affiant must demonstrate how additional time will allow for rebuttal of a movant's assertions. *Id.* at 1282–83 (citation omitted). A party's request for additional discovery does not preclude summary judgment where genuine and convincing need for further discovery is not presented. *Lamb's Patio Theatre, Inc. v. Universal Film Exchs., Inc.*, 582 F.2d 1068, 1071 (7th Cir.1978).

In his affidavit, Schwartz suggests that more discovery must be conducted by the Bank and that summary judgment is inappropriate until such discovery has been completed. The Bank, however, fails to show how it would benefit from further discovery, and the Court cannot ascertain any meritorious benefit to the Bank by granting such a request and thereby delaying or denying Federal–Mogul's motion at this time. Indeed, as stated above, the motion concerns only the validity and priority of Federal–Mogul's purported lien, while the additional discovery would seek to uncover information bearing on the extent of the lien.[1] " '[A] mere request for answers to interrogatories will [not] operate to bar the ... court from acting on a motion for summary judgment.' " *Ill. State Employees Union, Council 34, Am. Fed'n of State, County & Mun. Employees, AFL–CIO v. Lewis*, 473 F.2d 561, 566 (7th Cir.1972) (citation omitted). " 'It is incumbent upon the party seeking answers to demonstrate that his inquiry is directed toward establishing the 'material facts' and that upon receipt of those answers he will be armed to defend against that motion.' " *Id.* (citation omitted).

Moreover, a party in need of additional discovery must bring the issue before the court in a timely and expeditious manner. *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 (7th Cir.2000). Since the filing of its original complaint on May 18, 2001, the Bank has had over two years to conduct discovery. The Bank initially served Federal–Mogul with interrogatories, requests for admissions, and requests for production on April 15, 2003. Schwartz Aff. at ¶ 5 and Ex. A. One month later, Federal–Mogul submitted its responses. *Id.* at ¶ 6 and Ex. B. In addition, on May 8, 2003 and May 21, 2003, Schwartz received documents from Federal–Mogul in response to the Bank's discovery requests. *Id.* at ¶ 7. Subsequently, on June 2, 2003, Schwartz sent a letter to Federal–Mogul's counsel via facsimile, asking for additional

---

1. The Bank claims that Federal–Mogul has failed, *inter alia*, to identify the portions of the Tooling sold to Bombardier, to establish which part of the debt relates to "fabrication work performed," to demonstrate how various figures were arrived at, and to partition the debt into various categories. All of these allegations pertain to the extent or amount of the possessory lien at issue.

The Bank's only contention that concerns the validity of Federal–Mogul's lien goes to the element of possession and centers on the relationship between Federal–Mogul and its suppliers. That is, the Bank alleges that Federal–Mogul has not provided any admissible evidence to establish that the suppliers acted as Federal–Mogul's agents and that, therefore, Federal–Mogul did not have constructive possession of the Tooling through these suppliers. The Bank's naked assertion—that Federal–Mogul lacked possession of the Tooling, as required under the Indiana Fabricator's Lien Statute—without any specific, supporting references is insufficient to defeat Federal–Mogul's motion. *See* Local Bankr.R. 7056–2A(2)(a). Because the Bank has failed to provide such references, the facts proffered by Federal–Mogul regarding its relationship with its suppliers are deemed admitted pursuant to Local Rule 7056–2B.

documents to evidence how much of Federal–Mogul's claim is based on labor charges. *Id.* at ¶ 10 and Ex. C. The letter indicated that the Bank wanted to conduct depositions in the event that the parties were unable to settle the matter. *Id.* Further correspondence between counsel for the parties, in which the Bank renewed its request for additional documents and Federal–Mogul asserted that the documents already sent were "sufficiently responsive" to the Bank's request, was dated October 15, 2003 and October 16, 2003. *Id.* and Exs. D–E. Finally, on November 13, 2003, Schwartz sent a letter to counsel for Federal–Mogul, again by facsimile, demanding specific documents and threatening that if such documents were not produced by November 17, 2003, the Bank would file a motion to compel. *Id.* and Ex. F.

The Bank never filed such a motion. Nor did it ever file a formal request for a continuance. Further, the Bank failed to bring a motion for additional discovery before the Court was to rule on Federal–Mogul's motion for partial summary judgment. Instead, the Bank attached to its response Schwartz's affidavit which it designated as a "Rule 56(f) affidavit." The Bank has had ample opportunity to determine where the factual controversies lie in this matter. In fact, the Bank has availed itself of that opportunity, albeit in the guise of its Rule 56(f) affidavit, listing facts that it believes are in dispute. The Court notes that, in any event, none of those facts, even if established, would negate the evidence relevant to the instant motion.

## B. *The Indiana Fabricator's Lien Statute*

■ "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (finding that "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding"). Specifically, "applicable state law determines the . . . validity of liens on property in the bankruptcy estate." *Worthen Bank & Trust Co. v. Hilyard Drilling Co. (In re Hilyard Drilling Co.),* 840 F.2d 596, 599 n. 4 (8th Cir.1988) (*citing Freeland v. Chaseley's Foods, Inc. (In re Chaseley's Foods, Inc.),* 726 F.2d 303, 307 (7th Cir.1983)). Thus, the Court "look[s] to state law to ascertain what property the debtor owned immediately preceding the time of bankruptcy; what liens thereon, if any, then existed; the character thereof; and the order of priority among the respective creditors holding such liens." *Commercial Credit Co. v. Davidson (In re Chancellor),* 112 F.2d 54, 55 (5th Cir.1940). Federal–Mogul contends, and the Bank does not dispute, that Indiana law is controlling in this matter.

■ Under the Indiana Fabricator's Lien Statute, an individual or entity that manufactures, assembles, or improves a die, mold, form, jig, or pattern for a customer has a possessory lien on that item for the amount due for the work performed with it. IND.CODE §§ 32–33–16–1 to –3 (2003). Various provisions of the statute are relevant to the matter at bar. Section 3, entitled "Property subject to lien; right to possession," reads as follows:

(a) A fabricator has a lien, dependent on possession, on any die, mold, form, jig, or pattern in the fabricator's possession belonging to the customer for the amount due the fabricator from the customer for fabrication work performed with the die, mold, form, jig, or pattern.

(b) A fabricator may retain possession of the die, mold, form, jig, or pattern until the amount due is paid.

*Id.* § 32–33–16–3. Section 4, entitled "Notice to enforce lien," sets forth the initial statutory notice requirement:

> (a) Before enforcing a lien under this chapter, notice in writing must be given to the customer, whether delivered personally or sent by certified mail to the last known address of the customer.
>
> (b) The notice required under subsection (a) must:
>
> (1) state that a lien is claimed for the damages set forth or attached for the amount due for fabrication work or for making or improving the die, mold, form, jig, or pattern; and
>
> (2) include a demand for payment.

*Id.* § 32–33–16–4. Thus, a lienholder that claims a possessory lien under section 3 must give notice pursuant to section 4 of its intent to enforce the lien.

Finally, sections 5 and 6 focus on the sale of a die, mold, form, jig, or pattern at auction and the corresponding notice required. Section 5 provides as follows:

> If the lienholder has not been paid the amount due within sixty (60) days after the notice provided for in section 4 of this chapter, the lienholder may sell the die, mold, form, jig, or pattern at auction if:
>
> (1) the die, mold, form, jig, or pattern is still in the lienholder's possession; and
>
> (2) the lienholder complies with section 6 of this chapter.

*Id.* § 32–33–16–5. Setting forth the requirements of "[p]resale notice to customer[s] and persons having perfected security interests," section 6 reads in pertinent part:

> (a) Before a lienholder may sell the die, mold, form, jig, or pattern, the lienholder must, in writing, by certified mail, return receipt requested, notify the customer and any person whose security interest is perfected by filing of the following:
>
> (1) The lienholder's intention to sell the die, mold, form, jig, or pattern thirty (30) days after the customer's receipt of the notice.
>
> (2) A description of the die, mold, form, jig, or pattern to be sold.
>
> (3) The time and place of the sale.
>
> (4) An itemized statement of the amount due.

*Id.* § 32–33–16–6. Accordingly, a second notice must be given before the lienholder can sell the res to which the lien attached.

## III. *UNDISPUTED FACTS AND BACKGROUND*

Federal–Mogul manufactures and distributes a variety of components for automobiles, light trucks, heavy-duty trucks, and farm and construction vehicles, as well as industrial products. Amended Compl. at ¶ 24. In or around January 1998, OMC contracted with Federal–Mogul to manufacture certain Tooling associated with several of OMC's manufacturing and production projects. 7056–1 statement at ¶ 4; Harvey Aff. at ¶ 3. As part of its continuing business relationship with OMC, Federal–Mogul also used the Tooling to fabricate various products for three OMC projects referred to as the Pulse Pump Project, the Vapor Separator Project, and the PFO Project. *Id.* Federal–Mogul subcontracted portions of this work to its subcontractors and suppliers. 7056–1 statement at ¶ 5; Harvey Aff. at ¶ 8.

On December 22, 2000, OMC filed a voluntary petition for relief under Chapter 11. 7056–1 statement at ¶ 6. Subsequently, on February 9, 2001, the Court authorized the sale of substantially all of the assets associated with OMC's engine and boat businesses. *Id.;* Amended Compl. at ¶ 51; Feb. 9, 2001 Sale Order. Pursuant to that order, OMC sold to Bombardier certain

property, including the OMC Tooling, free and clear of all liens, claims, and interests.[2] 7056-1 statement at ¶ 6. On April 3, 2001, Federal–Mogul filed three proofs of claim totaling over $2 million.[3] Federal–Mogul Counterclaim, Ex. A.

On May 18, 2001, the Bank filed a complaint,[4] seeking the Court's determination as to the extent, validity, and priority of liens in those assets connected to OMC's engine and boat operations which had been or were to be sold; the Bank also asked the Court to compel the turnover of the sale proceeds. Subsequently, on June 6, 2003, the Bank filed an amended complaint. On July 7, 2003, Federal–Mogul filed an answer, asserting seven affirmative defenses.[5] About three months later, on October 1, 2003, Federal–Mogul filed the instant motion for partial summary judgment based on the third affirmative defense, which asserts as follows: "Immediately prior to the sale of assets to Bombardier, Federal–Mogul held possessory liens in the tooling owned by the Debtors. These liens arose under the statutory and common law of Indiana and are documented in three separate proofs of claim filed by Federal–Mogul with this Court on April 3, 2001. These statutory and common law liens are senior to any other security inter-

---

2. The Bank disingenuously denies that the Tooling was sold to Bombardier, contending that Federal–Mogul has provided no evidence to show that the Tooling was included in this transaction or that Bombardier took physical possession of the Tooling. 7056-2 statement at ¶ 6. Because the Bank's denial is a bare, unsupported assertion, Federal–Mogul's averment that the Tooling was included in the asset sale pursuant to the asset purchase agreement of February 5, 2001 is deemed admitted pursuant to Local Rule 7056-2B. *See* Responses to Interrogatories at ¶ 11.

3. The total amount of the claims at the time the case was filed was $2,251,903.29 ($718,237.76; $661,645.77; and $872,019.76). Federal–Mogul Counterclaim, Ex. A; 7056-1 statement at ¶ 7. Of this amount, $1,122,121.36 is allegedly the value of the OMC Tooling. 7056-1 statement at ¶ 7. However, the extent of Federal–Mogul's alleged lien is not at issue in the matter before the Court and is, therefore, of no moment.

4. Federal–Mogul is just one of a number of defendants identified in the complaint. Amended Compl. at ¶¶ 8 and 12–40.

5. The seven affirmative defenses are, briefly, as follows:

(1) The complaint fails to state a claim against Federal–Mogul upon which relief may be granted.

(2) Upon information and belief, the Bank failed to file a financing statement in the State of Indiana to perfect an interest in the collateral securing the indebtedness owed by OMC to Federal–Mogul; thus, any security interest claimed by the Bank in the property is, at best, unperfected.

(3) Just before the sale of assets to Bombardier, Federal–Mogul held possessory liens in the OMC Tooling. These liens, which arose under the statutory and common law of Indiana, are senior to any other security interests or liens claimed by any other entity.

(4) The Bank's claims are barred, in whole or in part, by the principles of waiver, release, estoppel, and laches.

(5) The Bank's claims are barred, in whole or in part, by applicable statutes of limitations.

(6) Federal–Mogul holds liens in its collateral under applicable non-bankruptcy law that are senior to those held or asserted by any other entity.

(7) Federal–Mogul reserves its rights to amend the answer and to assert additional affirmative defenses.

*See* July 7, 2003 Answer at 45–46. Only the third affirmative defense is at issue in the instant matter, and this Opinion is so limited to same. The Court hastens to add, however, that the second affirmative defense is also relevant to Federal–Mogul's claim that its lien is entitled to priority over the Bank's interest. In any event, the Court's observation is merely academic, because (1) the issue of priority need not be reached in this matter, and (2) Federal–Mogul failed to mention or refer to the second affirmative defense in the motion at bar.

ests or liens claimed by any other entity." July 7, 2003 Answer at 45. In short, Federal–Mogul contends that it has a valid possessory lien in the Tooling sold to Bombardier, that that lien is senior in priority to the security interest asserted by the Bank, and that Federal–Mogul is, accordingly, entitled to receive the proceeds from the sale of the Tooling. In response, both the Trustee and the Bank allege that Federal–Mogul failed to provide OMC with notice of its intent to assert its lien as required under the above quoted Indiana Fabricator's Lien Statute and that, as a result, Federal–Mogul has no perfected lien rights under the statute.

## IV. DISCUSSION

### A. The Bank's Motion to Strike

As a preliminary matter, the Court addresses the Bank's motion to strike portions of Richard Harvey's affidavit, which was filed on November 18, 2003. Specifically, the Bank has moved to strike the language in paragraphs 7 and 10 of Harvey's affidavit, which is highlighted in italics below, as well as the "corresponding assertions" in Federal–Mogul's 7056–1 statement:

7. As stated in Federal–Mogul's proofs of claim, the Debtors owe Federal–Mogul $2,251,903.29, including amounts due for the manufacture, assembly or improvement of the Outboard Marine Tooling and for the making of Fabricated Products using the Outboard Marine Tooling. *Upon information and belief, the value of the Outboard Marine Tooling is $1,122,121.36.*[6]

10. Pursuant to Federal–Mogul's purchase orders with the FMO Suppliers, Federal–Mogul's business cus-

toms, and *the customs in Federal–Mogul's industry,* Federal–Mogul retained control at all times over the Outboard Marine Tooling in the FMO Suppliers' actual possession. Furthermore, Federal–Mogul intended at all times to retain its liens on the Outboard Marine Tooling, regardless of whether it was in the actual possession of an FMO Supplier.

Harvey Aff. at ¶¶ 7 and 10.

The Bank contends that the Court should strike the part of paragraph 7 indicated above because it does not comport with the requirements of Federal Rule of Civil Procedure 56(e). Rule 56(e) governs affidavits accompanying motions for summary judgment, and a party can move to strike portions of an affidavit that do not comply with the Rule. *See* Fed. R.Civ.P. 56(e); *Jewell–Rung Agency v. Haddad Org., Ltd.,* 814 F.Supp. 337, 339 (S.D.N.Y.1993) (citation omitted). Rule 56(e) provides, in pertinent part, as follows: "Supporting and opposing affidavits shall be made on personal knowledge ... and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). "It is the [affiant's] personal knowledge, and not his beliefs, opinions, rumors or speculation, that [is] admissible at trial and the proper subject of any affidavit." *Ricks v. Xerox Corp.,* 877 F.Supp. 1468, 1470 (D.Kan. 1995).

"Rule 56(e)'s requirement of personal knowledge is mandatory." *Toro Co. v. Krouse, Kern & Co.,* 827 F.2d 155, 163 (7th Cir.1987) (citation omitted). Indeed, failure to comply with the Rule's requirement " 'makes the proposed evidence inadmissible during the consider-

---

**6.** In its response to the Bank's motion to strike, Federal–Mogul erroneously indicates that the value of the OMC Tooling is $1,222,121.36. *See* Resp. at 2.

ation of the summary judgment motion.'" *Bee v. Local 719, United Auto Workers*, 744 F.Supp. 835, 836 (N.D.Ill.1990) (citation omitted). However, the fact that an affidavit has some inadmissible parts does not completely contaminate it; a court may rely on the valid portions and merely ignore any deficient sections. *See Bennett v. Vill. of Oak Park*, 769 F.Supp. 1035, 1039 n. 3 (N.D.Ill.1991). Statements made "upon information and belief" cannot be considered in ruling on a summary judgment motion. *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir.1991) (*citing* Fed.R.Civ.P. 56(e)); *Neuma, Inc. v. E.I. Dupont de Nemours & Co.*, 133 F.Supp.2d 1082, 1086 (N.D.Ill.2001) (citation omitted); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 950 (Bankr.N.D.Ill.1995) (citations omitted).

The sentence in paragraph 7 of Harvey's affidavit is explicitly based "upon information and belief." Accordingly, the Court strikes the last sentence of paragraph 7, as well as the corresponding assertion in paragraph 7 of Federal–Mogul's 7056–1 statement. However, the Court notes that the stricken sentence does not bear on the material issues in the matter at bar, which concern only the validity and priority of Federal–Mogul's purported lien, not the extent of that lien. Federal–Mogul itself concedes that the statement is immaterial to the instant motion.

 As for paragraph 10, the Bank urges the Court to strike the portion that refers to "the customs in Federal–Mogul's industry," because Federal–Mogul has not established that Harvey is qualified to testify about the standards and practices in its industry. The Bank is accurate in noting that in order to present evidence regarding industry practices, the moving party must show that the affiant is suffi-

ciently competent and qualified to testify about those practices. *See Nat'l Diamond Syndicate, Inc. v. United Parcel Serv., Inc.*, 897 F.2d 253, 260 (7th Cir. 1990). Harvey's initial affidavit has not established his background, firsthand knowledge, or experience in the relevant industry: the manufacture, assembly and improvement of dies, molds, forms, jigs, and patterns for Federal–Mogul customers, in particular for manufacturers of marine watercraft, engines, and related goods. Therefore, the Court strikes this portion of paragraph 10 from Harvey's affidavit. However, there is no corresponding assertion in paragraph 5 of Federal–Mogul's 7056–1 statement as alleged by the Bank. *See* Motion to Strike at ¶ 13. Further, even if Harvey's competence to testify regarding the customs in Federal–Mogul's industry could be established, the portion of paragraph 10 sought to be stricken, like the part of paragraph 7 highlighted above, is not outcome determinative.

## B. *The Ripeness of Federal–Mogul's Motion*

Before turning to the statute at issue in this matter, the Court addresses the Bank's contention that a determination as to the validity and priority of Federal–Mogul's lien requires the Court to issue "nothing more than an advisory opinion." Specifically, the Bank claims that the "limited nature" of the motion, combined with Federal–Mogul's failure to provide "proper evidence for numerous elements" of its claim, is merely an attempt on Federal–Mogul's part to bypass a trial.[7] This contention is without merit.

 The Bankruptcy Code expressly states that core proceedings that may be heard and determined by bankruptcy

---

**7.** The issue of the sufficiency of the evidence was addressed and disposed of above.

judges include "determinations of the validity, extent, *or* priority of liens." 28 U.S.C. § 157(b)(2)(K) (emphasis added). *See also, e.g., Constellation Dev. Corp. v. Dowden (In re B.J. McAdams, Inc.),* 66 F.3d 931, 936 (8th Cir.1995), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996) (finding that the determination of the validity and priority of liens is a core matter over which the bankruptcy court had jurisdiction, even though the aggregate face amount of the liens exceeded the value of the property so that the estate may have had no equity).

Moreover, as set forth above, Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056(d), allows a court to render judgment upon only a portion of a case. Although Rule 56(d) gives the court a way to narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56, *Capitol Records, Inc. v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 29 (N.D.Ill.1985), partial summary judgment can be used to dispose of only one or more counts of a complaint in their entirety. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir. 1959); *Quintana v. Byrd,* 669 F.Supp. 849, 850 (N.D.Ill.1987); *In re Network 90 Degrees, Inc.,* 98 B.R. 821, 831 (Bankr. N.D.Ill.1989). In the matter at bar, partial summary judgment is altogether appropriate, because the Court's determination as to the validity and priority of Federal–

Mogul's lien—without a decision about the extent or amount of the lien—could dispose of Count I of the amended complaint in its entirety.[8] Such a judgment would not be considered an advisory opinion.

Finally, the judgment in this matter will affect the legal rights of the parties; therefore, this matter presents a genuine controversy. Federal courts have judicial power to hear only real cases or controversies. *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (citations omitted); *Crosetto v. State Bar of Wis.,* 12 F.3d 1396, 1403 (7th Cir.1993). If the issue cannot be brought into a court, then there is no case or controversy, and courts do not have the power or jurisdiction to render these purely advisory opinions. *Muskrat v. United States,* 219 U.S. 346, 359, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *People of the State of Ill. v. Archer Daniels Midland Co.,* 704 F.2d 935, 941 (7th Cir.1983) ("The term 'advisory opinion' is often just a conclusion; it is what you call a decision that does not resolve an actual case or controversy."); *Graziadei v. United States,* 319 F.2d 913, 914–15 (7th Cir.1963) (citation omitted).

An advisory opinion results if the court resolves a question of law that is not presented by the facts of the case. *In re Chi., Rock Island & Pac. R.R. Co.,* 772 F.2d 299, 303 (7th Cir.1985) (finding that a court can decide "only the case before it, and can not render advisory opinions disposing of other issues not presented for

---

8. Count I of the Bank's amended complaint, directed at "all defendants," avers as follows: "The Prepetition Agent Has a Valid, Perfected, Enforceable, and Non–Avoidable First Priority Lien over the Prepetition Collateral." Amended Compl. at 20. In contrast, the Court's determination as to the validity and priority of Federal–Mogul's lien would not dispose of Count VII of the Bank's amended complaint, which directly bears on the extent of the lien. *See id.* at 28 ("Count VII: The Valid and Enforceable First Priority Liens of the Agent Are Superior to Claimed Interests of Creditors") and 61 ("C. The Value of Interests ... Asserted by Various Creditors [including Federal–Mogul] Is Substantially Less than the Amount Claimed.").

decision"). Likewise, a court's opinion on hypothetical statutes or "dubious constitutional principles ... would be difficult to characterize as anything but advisory." *United States Nat'l Bank of Or.*, 508 U.S. at 447, 113 S.Ct. 2173. Further, a decision that cannot affect the legal rights of the parties is an impermissible advisory opinion, as are opinions on abstract legal questions. *See, e.g., In re Shondel*, 950 F.2d 1301, 1309 (7th Cir.1991); *United States v. Peters*, 754 F.2d 753, 757 (7th Cir.1985). Finally, "[a] dispute must have ripened into a legal case before a federal court can act; the case must not lie merely in the future." *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir.1989).

■ In the matter at bar, the Bank's characterization of Federal–Mogul's motion as one that is seeking an advisory opinion misses the mark. Federal–Mogul's motion for a finding that it has a valid, first priority lien which attached to the Tooling it manufactured and assembled is in the nature of a declaratory judgment, rather than an improper request for an advisory opinion. *See, e.g., Dishong v. United States Dep't of the Treasury Internal Revenue Serv. (In re Dishong)*, 188 B.R. 51, 53 (Bankr.M.D.Fla.1995) (citation omitted) (finding that such a determination is contemplated in the bankruptcy forum). There is little doubt that Federal–Mogul's suit is " 'an honest and actual antagonistic assertion of rights,' " that " 'valuable legal rights ... [will] be directly affected to a specific and substantial degree,' " and that, accordingly, this Court has before it a real case or controversy. *See United States Nat'l Bank of Or.*, 508 U.S. at 446, 113 S.Ct. 2173 (citations omitted). The dispute between the parties is real and ripe; the

issues are drawn; no mere hypothetical exists in which the parties simply seek advice. As an actual controversy exists, no purpose would be served by denying the motion based solely on the Bank's argument that such a judgment would constitute an advisory opinion. Thus, the Bank's objection is overruled.

### C. *The Indiana Fabricator's Lien Statute*

Having found that Federal–Mogul's motion is ripe, the Court now turns to the statutory arguments presented. As discussed above, although the Bank fervently disputes the sufficiency of the evidence provided by Federal–Mogul, the record in this matter presents no genuine issues of material fact as to the validity and priority of Federal–Mogul's purported lien. Accordingly, the dispute may be resolved as a matter of law by means of summary judgment.

At the heart of this matter is the proper interpretation of the Indiana Fabricator's Lien Statute. IND.CODE §§ 32–33–16–1 to –9 (2003). The Court's research reveals no published cases construing the statute.[9] There also appears to be a dearth of legislative history concerning this particular Indiana statute. Thus, the Court must resolve the issue at bar by turning to the ordinary principles and general rules of statutory construction.

■ In construing a statute, the court's role is to examine the statute in its entirety in order to discern the legislative intent, determine the objective that the statute aims to accomplish and the evils that it seeks to remedy, and, upon ascertaining the legislature's intent, give it ef-

---

9. The two unpublished cases that focus on the sections of the Indiana statute at issue, *W.W. Adcock v. Fort Wayne Pools, Inc.*, No. CIV. A.95–3565, *1997 WL 381769* (E.D.Pa. June 27, 1997), and No. CIV.A.95–3565, 1997 WL 476288 (E.D.Pa. Aug.19, 1997) (motion for reconsideration), are considered below.

fect. *United States Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7th Cir.1997) (citation omitted); *Adler v. N. Hotel Co.,* 175 F.2d 619, 620 (7th Cir.1949). All of this should be done primarily by considering the statutory language, which is the best evidence of the statute's purpose. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Lifschultz Fast Freight Corp.,* 63 F.3d 621, 623, 628 (7th Cir.1995) (citation omitted); *Stiffler v. Lutheran Hosp.,* 965 F.2d 137, 139 (7th Cir. 1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted).

■■■ Accordingly, a court's interpretive task must begin with an examination of the statutory language itself. *Precision Indus., Inc. v. Qualitech Steel SBQ, L.L.C.,* 327 F.3d 537, 543–44 (7th Cir.2003) (citation omitted); *Grabscheid v. Denbo Iron & Metal Co. (In re Luria Steel & Trading Corp.),* 189 B.R. 418, 422 (N.D.Ill. 1995) (citations omitted). In particular, "[w]hen a lien is created by statute, its operation and extent, and persons entitled to the lien ... 'are to be determined by the language of the statute.'" *Conseco Fin. Servicing Corp. v. Friendly Vill. of Indian Oaks,* 774 N.E.2d 87, 93 (Ind.Ct. App.2002) (citation omitted).

■■■ Where a statute is unambiguous, courts must give effect to the plain meaning of the statutory language. *Brownsburg Area Patrons Affecting Change v. Baldwin,* 137 F.3d 503, 508 (7th Cir.1998) (citation omitted); *In re Voelker,* 42 F.3d 1050, 1051 (7th Cir.1994) (citation omitted). Moreover, when the language is clear, there is no need to examine other indicia of legislative intent. *Newsom v. Friedman,* 76 F.3d 813, 816 (7th Cir.1996)

(citation omitted); *In re McFarland,* 84 F.3d 943, 947 (7th Cir.1996) (citations omitted). Instead, "the only legitimate function of the judiciary is to enforce the law as enacted by the legislature." *United States Fire Ins. Co.,* 132 F.3d at 1156–57 (citation omitted). However, when the meaning of a statute is unclear from the statutory language itself, a court may look beyond the express language employed. *Id.* at 1157 (citation omitted). Where several interpretations of a statute are possible, the legislative intent is determined from the statutory language in relation to the statute's context, history, scope, and subject matter, as well as the goal intended to be accomplished. *Qasem v. Kozarek,* 716 F.2d 1172, 1177 (7th Cir.1983) (citation omitted).

■■■ Absent specific statutory definitions, words or terms in a statute are presumed to have their ordinary, common, and contemporary meaning, unless such a construction would defeat the intention of the drafters. *Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. 1026 (citation omitted); *Precision Indus.,* 327 F.3d at 544 (*citing Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)); *Newsom,* 76 F.3d at 817 (citations omitted) ("'When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.'"). Further, according to conventional rules of statutory construction, courts interpret words and phrases in such a way as to avoid rendering them redundant, superfluous, or meaningless. *In re Merchants Grain, Inc.,* 93 F.3d 1347, 1353–54 (7th Cir.1996).

■■■ Finally, courts must determine the intent of the drafters by examining the entire statute. *McCammon v. Ind. Dep't of Fin. Insts.,* 973 F.2d 1348, 1353 (7th Cir.1992) (citations omitted); *United*

*States v. Jones,* 204 F.2d 745, 754 (7th Cir.1953) (citation omitted) ("Statutes are to be construed as a whole."). Although courts "have a duty to 'give effect, if possible, to every clause and word of a statute,'" they should "not be guided by a single sentence or member of a sentence. . . ." *Lifschultz Fast Freight Corp.,* 63 F.3d at 628 (citations omitted). Instead, statutory interpretation "'is a holistic endeavor,' . . . and, at a minimum, must account for a statute's full text . . . and language[,] as well as punctuation, structure, and subject matter." *United States Nat'l Bank of Or.,* 508 U.S. at 455, 113 S.Ct. 2173 (citation omitted). With respect to individual words and phrases, their meaning "cannot be determined in isolation, but must be drawn from the context in which [they are] used." *Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); *Smith v. United States,* 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("The meaning of a word that appears ambiguous if viewed in isolation [will often] become clear when the word is analyzed in light of the terms that surround it."). Likewise, courts must construe statutes in the context of the entire statutory scheme and avoid rendering provisions extraneous, ambiguous, or redundant. *United States Fire Ins. Co.,* 132 F.3d at 1157 (citations omitted) (finding that statutes must be evaluated as a whole, with each provision examined in context with every other provision); *Merchants Grain,* 93 F.3d at 1354 (citations omitted); *Adler,* 175 F.2d at 621 (citations omitted) ("'[E]very part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each.'").

With these principles in mind, the Court now turns to the statutory provisions at issue in this matter. The language of section 4 of the Indiana Fabrica-tor's Lien Statute provides, in pertinent part, that before a fabricator (in this matter, Federal–Mogul) can "enforce" a possessory lien under the statute, "notice in writing must be given to the customer" (in this matter, OMC). IND.CODE § 32–33–16–4. Federal–Mogul admits that it did not provide OMC with formal written notice asserting a lien on the Tooling. *See* Responses to Interrogatories at 13. However, Federal–Mogul argues that the notice provision has applicability only when a lienholder wants to sell a mold or die; because Federal–Mogul did not try to sell the Tooling as of the petition date, it contends that the notice requirement was not triggered. Instead, Federal–Mogul urges that its lien is governed solely by section 3 of the statute, which makes validity dependent only on the fabricator's possession of the Tooling. The Court rejects that argument.

The statute does not define "enforce," nor does it suggest that the word should be understood in a particular or narrow sense. Accordingly, the Court looks to the ordinary, common, and contemporary meaning of the word. *Black's* defines "enforce" to mean "[t]o give force or effect to (a law, etc.); to compel obedience to." BLACK'S LAW DICTIONARY 549 (7th ed.1999). Other dictionaries provide similar definitions. *See, e.g.,* OXFORD ENGLISH DICTIONARY 245 (2d ed. 1989) ("To compel by physical or moral force (the performance of an action, conformity to a rule, etc.); to impose (a course of conduct) on a person" . . . To compel the observance of (a law); to support by force (a claim, demand, obligation)"); RANDOM HOUSE UNABRIDGED DICTIONARY 644 (2d ed. 1993) ("[T]o put or keep in force; compel obedience to . . . [T]o impose . . . upon a person . . . [T]o support (a demand, claim, etc.) by force . . . [T]o impress or urge (an argument, contention, etc.) forcibly; lay stress upon . . ."); WEBSTER'S THIRD NEW INTERNATION-

AL DICTIONARY UNABRIDGED 751 (3rd ed. 1986) ("[T]o give force to ... [T]o urge with energy ... [T]o put in force; cause to take effect; give effect to esp. with vigor"). These plain language definitions of "enforce" do not resolve the issue at bar; thus, the word "enforce" in the statutory provision appears to be ambiguous.

Although the text of section 4, standing alone, yields no obvious answer as to the intention of the Indiana legislature in drafting the provision, reading that language in the context of the other statutory sections clarifies the necessity for the provision, as well as the "evil" sought to be remedied and the objective to be achieved. Scrutinizing the structure of the entire statute, the Court notes that section 3 concerns perfection of the fabricator's lien through possession. IND.CODE § 32–33–16–3 ("A fabricator has a lien, dependent on possession, on any die, mold, form, jig, or pattern in the fabricator's possession belonging to the customer for the amount due the fabricator from the customer for fabrication work performed with the die, mold, form, jig, or pattern."). In contrast, section 4 pertains to informing the customer that the lien is being asserted through enforcement. *Id.* § 32–33–16–4 ("Before enforcing a lien under this chapter, notice in writing must be given to the customer...."). Section 5 explains that if the lienholder is not paid what it is owed within sixty days after this initial notice, the lienholder can sell the die or mold at auction; however, prior to such a sale, the lienholder must still be in possession of the die or mold and must comply with section 6. *Id.* § 32–33–16–5. This final relevant section requires the lienholder to provide both the customer and any person with a perfected security interest with written notice of the lienholder's intention to sell the die or mold. *Id.* § 32–33–16–6.

Read as a contextual whole, the Indiana legislature's intentions in drafting the statute emerge. Specifically, it appears that three separate and distinct subjects are addressed: (1) perfection of the fabricator's lien through possession (§ 32–33–16–3); (2) advising the customer that the lien is being asserted (§ 32–33–16–4); and (3) sale of the mold or die of the customer who will not pay the fabricator what it is owed (§§ 32–33–16–5 and –6). *See W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.,* No. CIV.A.95–3565, 1997 WL 476288, at *1 (E.D.Pa. Aug.19, 1997). If the Court were to apply Federal–Mogul's suggested construction of the statute, "enforce" and "sale" would be combined into one concept, making section 4—the enforcement provision of the statute—redundant, superfluous, and extraneous. *See id.*

The Bank urges the Court to adopt the reasoning of *W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.,* the only case that has interpreted the Indiana Fabricator's Lien Statute. The facts of *Adcock* are similar to those in the case at bar. W.W. Adcock ("Adcock") provided Fort Wayne Pools, Inc. ("Fort Wayne") with a mold and contracted with Fort Wayne to manufacture acrylic spa mold shells. *W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.,* No. CIV.A.95–3565, 1997 WL 381769, at *1 (E.D.Pa. June 27, 1997). During the course of this business relationship, Adcock decided to switch manufacturers and asked Fort Wayne to ship the molds to the new manufacturer. *Id.* Fort Wayne refused. *Id.* As tension mounted and tempers flared, Fort Wayne opened a distribution facility near Adcock's Virginia site and tried to hire Adcock employees and take sales away from Adcock. *Id.* at *2. Adcock filed suit, alleging breach of contract, breach of duty of care, breach of implied covenant of good faith and fair dealing, and fraudulent misrepresentation. *Id.* Fort Wayne asserted the Indiana Fabricator's Lien Statute as a defense. *Id.*

The court noted, at the outset, that the statute must be strictly construed, because it abrogates the common law of bailment. *Id.* (citing *Gibraltar Mut. Ins. Co. v. Hoosier Ins. Co.*, 486 N.E.2d 548, 553 (Ind.Ct. App.1985)). This point is critical to the matter at bar, and the Court similarly applies this rule of statutory construction here.

The *Adcock* court ultimately found that in order to assert a lien, the lienholder must notify the customer in writing of its intent to enforce the lien and demand payment for damages. *Id.* Because Fort Wayne failed to make such a demand, the court held that it was not entitled to its lien. *Id.*

On Fort Wayne's motion for reconsideration, the court further examined the Indiana Fabricator's Lien Statute. *W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.*, No. CIV.A.95–3565, 1997 WL 476288 (E.D.Pa. Aug.19, 1997). It disagreed with Fort Wayne's contention that § 32–33–16–3 (formerly, § 32–8–37–2) was the only provision of the statute that governed the validity of the lien. *Id.* at *1–2. After examining the plain language of the statute and ascertaining the intent of the Indiana legislature, the court discussed the nature and purpose of the fabricator's possessory lien:

> [T]he Indiana Legislature recognized the reality of two commercial entities creating a long term relationship where a customer provides a mold to a fabricator and the fabricator uses the mold to create products for the customer. The fabricator has a lien of various amounts at different times, depending upon the amount of work done for the customer and the customer's payment schedule. The lien, perfected through possession, protects the fabricator against other parties with an interest in the mold and

remains in the background of the bailment of the mold. . . .

> *If at some time the relationship between the fabricator and the customer changes,* such as here where the customer requested possession of the mold or *where the customer does not pay the fabricator for work completed, then the business relationship between the parties drastically changes and the fabricator will desire to enforce its lien against the customer. To do so, the fabricator must comply with Ind.Code § 32–8–37–3 [§ 32–33–16–4],* which Fort Wayne did not do. Sixty days after enforcing the lien, the fabricator may then proceed to sell the mold if the customer still owes the fabricator money, following giving the customer statutory notice of the sale.

*Id.* at *2 (emphasis added). The Court wholly agrees with the *Adcock* court and adopts both that reasoning and conclusion.

In addition to its erroneous assertion that the Bank has misinterpreted *Adcock*, Federal–Mogul relies on two cases—*In re Flue Gas Resources, Inc.*, 77 B.R. 628 (Bankr.N.D.Ohio 1987), and *Plasti–World Products, Ltd. v. Burgundy Products Manufacturing, Inc.*, No. 98–C–4348, 1999 U.S. Dist. LEXIS 19913, 1999 WL 1270714 (N.D.Ill.Dec. 27, 1999). Before briefly reviewing these cases, the Court notes at this juncture that many states have enacted fabricator's lien acts that are similar to the Indiana statute with respect to notice. *See, e.g.,* 770 ILL. COMP. STAT. 105/1 to /6 (2003); KY.REV.STAT. ANN. § 376.435 (Banks–Baldwin 2003); MASS. GEN. LAWS ch. 225 § 31G (2003); MICH. COMP. LAWS §§ 445.618a–445.618d (2003); N.H.REV. STAT. ANN. § 350–C:1 to:4 (2003); N.Y. LIEN LAW §§ 150–154 (McKinney 2003); R.I. GEN. LAWS § 34.30.1–1 to –4 (2003); WASH. REV.CODE § 60.84.010 (2003). Fabricator's lien acts enacted in other states

significantly differ from the Indiana statute. *See, e.g.,* FLA. STAT. ch. § 713.596 (2003) (requiring specifically worded warning in initial notice); GA.CODE ANN. § 44–12–320 (2003) (containing only one notice provision); OHIO REV.CODE ANN. § 1333.29 to .31 (2003) (requiring only one "final notice" sent to customer); OKLA. STAT. tit. 15, § 693 (2003) (containing only one notice requirement); 73 PA. STAT. ANN. § 1880.7 (2003) (same); S.C.CODE ANN. § 39–69–40 (Law.Co-op.2003) (same); TENN.CODE ANN. § 66–18–102 (2003) (same). Thus, unlike statutes, such as the Uniform Commercial Code and the Bankruptcy Code, which have been unvaryingly adopted by all of the states, some of the fabricator's lien acts differ in such marked ways from the Indiana statute that they often cannot be relied upon for support.

The Ohio molder's lien statute is one such act. Accordingly, Federal–Mogul cannot persuasively rely on *Flue Gas Resources, Inc.,* 77 B.R. 628 (Bankr.N.D.Ohio 1987), which involved Ohio's statute, to bolster its position. In that case, a debt arose from the fabrication and sale of various molds to Flue Gas Resources, Inc. ("Flue Gas"). *Id.* at 629. After Flue Gas filed a voluntary petition under chapter 7, one of its creditors, Thermodyn Corporation ("Thermodyn"), served upon the trustee a "final notice." *Id.* at 629–30. The notice included a request for payment, an itemized statement setting out the amount due, and a description of the molds involved, as well as a statement that unless the amount due was paid within thirty days, Thermodyn would keep the molds and proceed to enforce its lien under the Ohio statute. *Id.* at 630. The court found that because the "final notice" required by the statute would not provide notice to a bona fide purchaser, possession was the act which provided that notice to third parties. *Id.* at 631. Accordingly, the

court found that the lien was perfected by possession. *Id.*

Ohio's molder's lien statute differs from Indiana's in many ways, including the fact that the Ohio statute requires that notice be sent only one time (the "final notice"). *See* OHIO REV.CODE ANN. § 1333.31(B) ("If a customer does not pay the amount due for ... fabrication work performed with a die, mold, pattern, or form ... within sixty days from the date it becomes due, the molder may send ... the customer ... a final notice."). Further, this Court does not quarrel with Federal–Mogul's contention that its claimed lien existed; at issue is the *enforcement* of that lien as against the sales proceeds in light of Federal–Mogul's failure to give OMC the requisite statutory notice pursuant to section 4 of the controlling Indiana statute.

The other case on which Federal–Mogul relies, *Plasti–World Products, Ltd. v. Burgundy Products Manufacturing, Inc.,* No. 98–C–4348, 1999 WL 1270714, 1999 U.S. Dist. LEXIS 19913 (N.D.Ill.Dec. 27, 1999), involved Illinois's Tool and Die Lien Act. Although the Illinois act differs from the Indiana statute by noting that the fabricator's possessory lien is "subject only to a security interest properly perfected pursuant to Article 9 of the Uniform Commercial Code," 770 ILCS 105/1, it does contain two notice requirements. *See id.* 105/3 (initial notice before enforcing a lien) and 105/5 (second notice before selling a die or mold). The *Plasti–World* court analyzed the Illinois act and found that, although it requires dual notice before the property subject to a lien may be sold, nothing in the notice provisions or any other provision of the act suggests that a lien does not exist until notice is given. *Plasti–World Prods.,* 1999 WL 1270714, at *7, 1999 U.S. Dist. LEXIS 19913, at *7. The court ultimately held that "[p]ossession is a prerequisite to enforcement of the lien, not its

attachment." *Id.*, 1999 WL 1270714, at *7, 1999 U.S. Dist. LEXIS 19913, at *8 (citation omitted).

With all due respect to the *Plasti–World* court applying the Illinois law, this Court is persuaded by the analysis of the *Adcock* court applying the Indiana statute at bar and adopts the holding of the latter. As discussed above, Federal–Mogul claimed a possessory lien under the Indiana statute and now seeks to effectively enforce it and recover the unpaid amount thereof from the sale proceeds. This it cannot do, having failed to provide the required section 4 notice to OMC.[10]

Moreover, the *Plasti–World* decision directly conflicts with the one rendered in *Affiliated Bank v. Evans Tool & Manufacturing Co.*, 229 Ill.App.3d 464, 170 Ill.Dec. 603, 593 N.E.2d 145 (1992). In *Affiliated Bank*, the court ruled that the defendant's tool and die lien did not attach until the date on which the defendant had provided written notice of the lien. *Id.*, 170 Ill.Dec. 603, 593 N.E.2d at 148. In other words, the court held that a lien under Illinois's act does not attach until the purported lienholder gives notice. *Id.*

In sum, the Court's reading of the Indiana Fabricator's Lien Statute is consistent with not only the statutory scheme and the structure of the statute, but also with the three-pronged legislative intent. Further, the Court's construction of the two statutory notice provisions— § 32–33–16–4 and § 32–33–16–6—does not render the former superfluous, redundant, or extraneous. The Court feels confident that it is both reasonable and correct to interpret and reconcile the notice provisions by

finding that § 32–33–16–4 requires written notice before a fabricator can "enforce" its lien, while § 32–33–16–6 notice is a prerequisite to the fabricator's selling of the property subject to the lien. The Court, therefore, finds that under the Indiana Fabricator's Lien Statute, a fabricator must assert its lien by complying with the statutory notice provision set forth in § 32–33–16–4 in order to lay claim to benefits under the statute. As Federal–Mogul failed to do so, the Court holds that Federal–Mogul is not entitled to enforce a lien against the subject Tooling or the sale proceeds thereof under the statute as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Court denies Federal–Mogul's motion for partial summary judgment and grants the Bank's motion to strike portions of Harvey's affidavit and the corresponding assertion in Federal–Mogul's 7056–1 statement. Federal–Mogul's third affirmative defense is hereby denied and dismissed. The Final Pretrial Orders previously entered setting the adversary proceeding for trial remain in full force and effect.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

10. Federal–Mogul argues that the Bank had knowledge of the alleged lien through Federal–Mogul's proofs of claim and its objection to the asset sale and that, accordingly, notice required under section 4 was unnecessary. Federal–Mogul Reply at 2. This contention is completely without merit. Section 4 of the Indiana statute clearly indicates that notice to the customer is required, regardless of whether or not the recipient of that notice has knowledge of the lien. *See* IND.CODE § 32–33–16–4.